**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:20-CV-60432-SINGHAL**

JASON NUWER, AMARILLIS GINORIS,
and KEVIN VAN ALLEN, on behalf of themselves
and all others similarly situated,

      Plaintiffs,

v.

FCA US LLC f/k/a CHRYSLER GROUP LLC,
a Delaware limited liability company,

      Defendant.

_____/


**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**
**AND INCORPORATED MEMORANDUM OF LAW**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................. 3

Chrysler Learns of the Defect, but Denies Its Existence ............................................... 4

Chrysler Knew That the AHR Defect Was a Significant Safety Defect.......................... 6

Chrysler Conceals the Defect and Continues to Market Its Vehicles as Safe ............... 8

Procedural History ...................................................................................................... 10

ARGUMENT ................................................................................................................ 10

I.     PLAINTIFFS SATISFY THE FOUR PREREQUISITES OF RULE 23(A). ............. 11

A.    The Putative Class of Chrysler Consumers Satisfies the Numerosity Requirement. 11

B.    Plaintiffs and the Proposed Class Satisfy Commonality. ......................................... 12

C.    Plaintiffs' Claims Are Typical of Those of the Class. .............................................. 15

D.    Plaintiffs and Their Counsel Will Fairly and Adequately Represent the Interests of the Class. ................................................................................................................ 16

    1.    Plaintiffs Do Not Have Interests Antagonistic to the Rest of the Class. ............. 17

    2.    Plaintiffs' Counsel Are Qualified and Experienced Attorneys Who Are More Than Capable of Conducting the Proposed Litigation. ....................................... 17

II. PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(B)(2)–(3). .................. 18

    A.    Common Questions of Law and Fact Predominate Because Legal and Factual Questions Will Be Resolved with Proof Common to Plaintiffs and the Class.... 19

    B.    A Class Action Would Be Superior to the Adjudication of Individual Claims. . 22

        1.    Individual class members' interest in separate actions and the extent and nature of litigation already commenced ................................................................... 22

        2.    Difficulties likely to be encountered in the management of a class action ...... 24

    C.    The Court Should Certify a Rule 23(b)(2) Class for Injunctive Relief. .............. 26

i

## **<u>TABLE OF AUTHORITIES</u>**

**<u>Cases</u>**

*Alger v. FCA US LLC*,
  334 F.R.D. 415 (E.D. Cal. 2020) ................................................................. passim

*Alhassid v. Bank of Am., N.A.*,
  307 F.R.D. 684 (S.D. Fla. 2015) ........................................................................ 16

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................................ 19

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ............................................................................................ 11

*Andrews v. Bechtel Power Corp.*,
  780 F.2d 124 (1st Cir. 1985) .............................................................................. 11

*Aranaz v. Catalyst Pharm. Partners Inc.*,
  302 F.R.D. 657 (S.D. Fla. 2014) ........................................................................ 19

*Belin v. Health Ins. Innovations, Inc.*,
  337 F.R.D. 544 (S.D. Fla. 2021) .................................................................. 13, 16

*Brown v. Electrolux Home Prods., Inc.*,
  817 F.3d 1225 (11th Cir. 2016) ......................................................................... 22

*Brown v. SCI Funeral Servs. of Fla., Inc.*,
  212 F.R.D. 602 (S.D. Fla. 2003) ........................................................................ 10

*Bruhl v. Price WaterhouseCoopers Int'l*,
  257 F.R.D. 684 (S.D. Fla. 2008) ........................................................................ 15

*Butler v. Sears Roebuck & Co.*,
  727 F.3d 796 (7th Cir. 2013) ............................................................................. 24

*Butto v. Collecto Inc.*,
  290 F.R.D. 372 (E.D.N.Y. 2013) ....................................................................... 24

*Cardenas v. Toyota Motor Corp.*,
  2021 WL 6926418 (S.D. Fla. Aug. 12, 2021) ................................................... 12

*Carriuolo v. Gen. Motors Co.*,
  823 F.3d 977 (11th Cir. 2016) ........................................................................... 22

*CGC Holding Co., LLC v. Broad & Cassel*,
  773 F.3d 1076 (10th Cir. 2014) ......................................................................... 24

*Cheney v. Cyberguard Corp.*,
   213 F.R.D. 484 (S.D. Fla. 2003) .................................................................................... passim

*Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*,
   332 F. App'x 565 (11th Cir. 2009) ....................................................................................... 21

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ................................................................................................................ 22

*Garcia v. Chrysler Grp. LLC*,
   127 F. Supp. 3d 212 (S.D.N.Y. 2015) ................................................................................... 20

*Gayle v. Meade*,
   No. 20-21553-CIV, 2020 WL 3041326 (S.D. Fla. June 6, 2020) ........................................... 11

*Green v. Wolf Corp.*,
   406 F.2d 291 (2d Cir. 1968) .................................................................................................. 25

*Griffin v. Carlin*,
   755 F. 2d 1516 (11th Cir. 1985) ........................................................................................... 18

*Herrera v. JFK Med. Ctr. Ltd. P'ship*,
   648 F. App'x 930 (11th Cir. 2016) ........................................................................................ 19

*Holzman v. Malcolm S. Gerald & Assocs., Inc.*,
   334 F.R.D. 326 (S.D. Fla. 2020) ........................................................................................... 15

*In re 1 Glob. Cap. LLC*,
   No. 18-19121-RAM, 2020 WL 1486791 (Bankr. S.D. Fla. Mar. 23, 2020) ........................... 17

*In re Abbott Labs. Norvir Anti–Trust Litig.*,
   2007 WL 1689899 (N.D. Cal. 2007) ...................................................................................... 25

*In re Alexander Grant & Co. Litig.*,
   110 F.R.D. 528 (S.D. Fla. 1986) ........................................................................................... 19

*In re Cardizem CD Antitrust Litig.*,
   218 F.R.D. 508 (E.D. Mich. 2003) ........................................................................................ 25

*In re Checking Account Overdraft Litig.*,
   275 F.R.D. 666 (S.D. Fla. 2011) ............................................................................... 10, 13, 19

*In re Checking Acct. Overdraft Litig.*,
   307 F.R.D. 656 (S.D. Fla. 2015) ........................................................................................... 25

*In re Managed Care Litigation*,
   209 F.R.D. 678 (S.D.Fla.2002) ............................................................................................. 24

iii

*In re Terazosin Hydrochloride Litig.*,
  220 F.R.D. 672 (S.D. Fla. 2004) ................................................................. 15, 19, 25

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
  644 F.3d 1168 (8th Cir. 2011) ................................................................. 21

*James D. Hinson Elec. Contracting Co. v. BellSouth Telecomms., Inc.*,
  275 F.R.D. 638 (M.D. Fla. 2011) ................................................................. 16

*Keilholtz v. Lennox Hearth Prod. Inc.*,
  268 F.R.D. 330 (N.D. Cal. 2010) ................................................................. 25

*Kilgo v. Bowman Transp., Inc.*,
  789 F.2d 859 (11th Cir. 1986) ................................................................. 11

*Klay v. Humana, Inc.*,
  382 F.3d 1241 (2004) ................................................................. 24

*Klewinowski v. MFP, Inc.*,
  No. 8:13-CV-1204-T-33TBM, 2013 WL 5177865 (M.D. Fla. Sept. 12, 2013) ...................... 13

*Moreno-Espinosa v. J&J AG Prods.*,
  247 F.R.D. 686 (S.D. Fla. 2007) ................................................................. 10

*Navelski v. Int'l Paper Co.*,
  261 F. Supp. 3d 1212 (N.D. Fla. 2017) ................................................................. 11

*Office of Atty. Gen., Dep't of Legal Affairs v. Wyndham Int'l, Inc.*,
  869 So. 2d 592 (Fla. 1st DCA 2004) ................................................................. 21

*Pa. Emp. Benefit Trust Fund v. Zeneca, Inc.*,
  710 F. Supp. 2d 458 (D. Del. 2010) ................................................................. 25

*Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*,
  311 F.R.D. 688 (S.D. Fla. 2015) ................................................................. 12

*Parkinson v. Hyundai Motor Am.*,
  258 F.R.D. 580 (C.D. Cal. 2008) ................................................................. 12

*Randolph v. J.M. Smucker Co.*,
  303 F.R.D. 679 (S.D. Fla. 2014) ................................................................. 21

*Rutstein v. Avis Rent-A-Car Sys., Inc.*,
  211 F.3d 1228 (11th Cir. 2000) ................................................................. 20

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
  601 F.3d 1159 (11th Cir. 2010) ................................................................. 25

*Salas v. Toyota Motor Sales, U.S.A., Inc.*,
  No. CV 15-8629 FMO (EX), 2019 WL 1940619 (C.D. Cal. Mar. 27, 2019) ......................... 21

*Sanchez–Knutson v. Ford Motor Company*
  310 F.R.D 529 (S.D.Fla.2015). ................................................................................... 16

*Soutter v. Equifax Info. Servs., LLC*,
  307 F.R.D. 183 (E.D. Va. 2015) .................................................................................... 24

*Tapken v. Brown*,
  No. 90-691-CIV, 1992 WL 178984 (S.D. Fla. Mar. 13, 1992) ............................................. 11

*Tefel v. Reno*,
  972 F. Supp. 608 (S.D. Fla. 1997) ................................................................................ 17

*Tershakovec v. Ford Motor Co.*,
  546 F. Supp. 3d 1348 (S.D. Fla. 2021) ...................................................................... 20, 22

*Town of New Castle v. Yonkers Cont. Co.*,
  131 F.R.D. 38 (S.D.N.Y. 1990) .................................................................................... 20

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) .................................................................................................. 19

*Walco Invs., Inc. v. Thenen*,
  168 F.R.D. 315 (S.D. Fla. 1996) .............................................................................. 16, 23

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .............................................................................................. 13, 14

*Williams v. Mohawk Indus., Inc.*,
  568 F.3d 1350 (11th Cir. 2009) .................................................................................... 16

*Williams v. Wells Fargo Bank, N.A.*,
  280 F.R.D. 665 (S.D. Fla. 2012) ................................................................................... 23

*Wolin v. Jaguar Land Rover N. Am.*,
  617 F.3d 1168 (9th Cir. 2010) ..................................................................................... 13

## **Statutes**

Fla. Stat. § 501.211(1) ................................................................................................ 26

Fla. Stat. § 672.314 .................................................................................................... 21

N.Y. U.C.C. Law § 2-314 ............................................................................................. 21

NY GBL § 350 ........................................................................................................... 16

**Rules**

Fed. R. Civ. P. 23 ................................................................................................. passim

**Regulations**

U.C.C. § 2-314 ...................................................................................................... 21

49 C.F.R. § 576.5–576.7 ........................................................................................ 12

**Other Authorities**

H. Newberg, NEWBERG ON CLASS ACTIONS (1992) ....................................... 22, 23, 24

## <u>INTRODUCTION</u>

This case is ideally suited for class certification. Over the course of a decade, Chrysler sold millions of vehicles equipped with two defective front-seat active head restraints ("AHRs"). The AHRs were designed to spring forward in the event of a rear-end collision to catch and protect the occupant's head and neck upon impact. Chrysler, however, designed the components which held the AHRs in place using an inexpensive and unsuitable plastic known as Polycarbonate-Acrylonitrile Butadiene Styrene, or PC/ABS. As a result, the AHRs in Chrysler's vehicles were designed to fail—through the vehicles' normal operation, the plastic components in the AHR progressively cracked and weakened under pressure, ultimately causing the plastic to snap and the AHR to spring forward, potentially striking the seat's occupant forcefully in the back of the head and neck. Chrysler also used lubricants in the AHR's design known to be incompatible with PC/ABS, which accelerated the corrosion, both exacerbating the problem and heightening the risk to consumers.

Despite a flood of consumer complaints, including complaints of driver injuries, and clear, documented knowledge of the defect, Chrysler refused to fix the defect or warn consumers that it posed an ongoing risk.  Instead, in violation of a clear legal duty to disclose, Chrysler concealed the risk from consumers and issued a public statement denying its existence. And when consumers brought broken headrests to Chrysler dealerships for repair, rather than fixing the problem, Chrysler simply replaced the deployed AHRs with new, equally defective replacement AHRs.

The Eastern District of California has already certified a California class of consumers in an action involving state statutory claims against Chrysler arising from the same defect. *See Alger v. FCA US LLC*, 334 F.R.D. 415 (E.D. Cal. 2020). In its order certifying the class, the California court concluded that the common questions raised by the plaintiff's claims outweighed any individual concerns: Chrysler used the same AHR system design and materials in all Class Vehicles, and therefore the same defect, if proven, was present in all Class Vehicles; litigation would focus on Chrysler's knowledge of and conduct with respect to the defect; and evidence that the defect rendered Chrysler vehicles unsafe established that they were similarly unsafe across the class. *See Alger*, 334 F.R.D. at 424–28. The court also concluded the plaintiffs' expert had proposed a common methodology for calculating the proposed benefit-of-the-bargain damages on a class-wide basis. *See id.* at 429.

Plaintiffs' claims in this case are equally amenable to class certification because the facts

1

relating to the AHRs' design and failure, and Chrysler's deceptive conduct in handling the problem, are the same as those presented in *Alger*. Indeed, this litigation has provided even more conclusive evidence than *Alger* that Chrysler was aware of and concealed the AHR defect to the detriment of Plaintiffs and the putative class. The evidence produced in discovery shows that all Class Vehicles were equipped with AHRs with the same latent design defect, and Chrysler knew as early as 2009 that the broken plastic could cause spontaneous and unexpected, or "uncommanded," deployments of the vehicles' headrests.

Chrysler also knew that the defect was dangerous. Customer complaints increased in number as the AHRs remained in circulation for at least a decade, including complaints of traumatic head, brain, and neck injuries, some of which were accompanied by lawsuits. Despite knowing that uncommanded deployments were a "big issue" and that the defect endangered its customers, Chrysler did not disclose either the defect or the risk it created to any consumer personally or by publication. The presence of other defects in the AHR did not eradicate the threat of environmental stress cracking of the PC/ABS—while a small number of early deployments may have been caused by a "false latch condition" affecting the AHRs, *all* Chrysler AHRs (including those exhibiting the false-latch condition) *also* carried the PC/ABS plastic defect from the beginning.

Finally, the calculation of the class's damages is subject to a common methodology: Plaintiffs' damages expert, Edward Stockton, describes a damages model which would assess the amount overpaid by the class as a result of Chrysler's deceptive practices, and compensate each class member for his or her lost benefit of the bargain.

The Court should grant Plaintiffs' motion and certify the following classes:

**The Nationwide Class (excluding California)**:

All persons in the United States (excluding the State of California) who currently own or lease, or who have owned or leased, one or more vehicles manufactured by Chrysler, or any of its subsidiaries or affiliates, which are equipped with headrests containing the defective AHR.

**The Florida Subclass**:

All persons who purchased or leased one or more vehicles manufactured by Chrysler, or any of its subsidiaries or affiliates, in Florida, which vehicles were installed with headrests containing the defective AHR.

*The New York Subclass*:

All persons who purchased or leased one or more vehicles manufactured by Chrysler, or any of its subsidiaries or affiliates, in New York, which vehicles were installed with headrests containing the defective AHR.

## BACKGROUND

Chrysler knowingly sold and leased vehicles with dangerously defective AHRs for more than a decade. In 2008, Chrysler and Grammer Industries, Inc. ("Grammer") began to manufacture AHRs which they had designed to spring forward to support drivers' and passengers' heads and necks in the event of a significant rear-end collision. As designed, the forward-facing padded surface of the Chrysler headrest is mounted to a plastic carriage that is loaded by pre-tensioned springs when stowed in the headrest prior to deployment. *See* First Am. Compl., [D.E. 10] ("FAC") ¶ 59. The carriage is secured in the stowed position by a pin-and-hook latch assembly. *See id.* The pin is secured in a nest in the carriage and the latch, in turn, is linked to the vehicle's electronic computer control unit. *See id*. When the control unit detects a rear-end collision exceeding a predetermined level of severity, a signal triggers the pin-and-hook latch to release the pin, allowing the carriage to be forced forward by the springs. *See id*. The device then rapidly propels the face of the headrest forward, by 40 millimeters, and upwards, by 30 millimeters, to meet the head as it travels backwards. *See id* ¶ 60. The device fully deploys in .027 seconds. *See id.* This is known as a commanded deployment; it is the intended function of the Chrysler AHR. *See id.*



████████████████   ████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████ This conclusion was confirmed by the plaintiff's expert in *Alger*, who opined that "the design in the AHR System in Class Vehicles is identical from an engineering standpoint." *Alger v. FCA US LLC*, 334 F.R.D. 415, 423 (E.D. Cal. 2020). In *Alger*, the parties stipulated that the same design is used in seventy-eight make and model year vehicles, and in a stipulation and order approved by the *Alger* Court. *See* Joint Stip. and Order [D.E. 152], *Alger*, No. 2:18-cv-360 (E.D. Cal.).

## Chrysler Learns of the Defect, but Denies Its Existence

Chrysler learned of the defect soon after production began. ███████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████   ████████████████████████████████



██████████████████████████████████████████████.

Ultimately, Chrysler did not offer consumers a warranty extension (or any other relief) until June 2020—approximately a decade after it first learned of the problem, five years after it concluded that the latch-pin retainer was susceptible to environmental stress cracking, almost three years after the *Alger* plaintiff filed the California class action lawsuit addressing the defect, and six months after Plaintiffs in this case filed suit. ████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████

**<u>Chrysler Knew That the AHR Defect Was a Significant Safety Defect</u>**

████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████

Indeed, the Chrysler AHR defect has already injured consumers and otherwise jeopardized their safety. ████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████

Drivers also complained about injuries resulting from uncommanded deployments in online fora dedicated to Chrysler vehicles. ████████████████████████████ ████████████████████████████████████████████████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████

Two plaintiffs in related cases experienced similar injuries. One plaintiff's passenger-side headrest deployed without warning, striking his teenage daughter on the back of the head. *See* Am. Compl. ¶ 18, [D.E. 34], *Walton v. Grammer Indus., Inc.*, No. 2:20-cv-12298 (E.D. Mich.). His daughter did not go to the hospital because of the COVID-19 pandemic, but experienced headaches, pain, and stiffness for days after the uncommanded deployment occurred. *Id.* ¶¶ 18, 82. Similarly, the AHR in Plaintiff Alger's vehicle struck him on the back of the head while he was driving thirty miles per hour on a local road. Second Am. Compl. ¶ 30, [D.E. 13], *Alger*, No. 2:18-cv-360 (E.D. Cal.). Plaintiff Alger experienced severe headaches as a result of the impact and missed three days of work after his doctor diagnosed him with a concussion. *Id.* ¶¶ 30–31.

Chrysler knew that its AHRs jeopardized consumer safety. ████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

Despite these consumer complaints, and the obvious threat posed by drivers being struck

forcefully on the back of the head while operating moving vehicles, Chrysler has denied that the defect posed a safety hazard both internally and in public statements. ██████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████ Accordingly, in December 2018, in response to news reports regarding uncommanded deployments, Chrysler publicly denied the existence of the defect and any threat to consumer safety, stating:

> FCA U.S. vehicles meet or exceed all federal safety requirements. Consumer safety is paramount at FCA US. Active head restraints enhance vehicle safety. Evaluations confirm that even in the rare event of inadvertent deployment there is no unreasonable risk of injury. Absent such risk, there is no safety defect. FCA US strongly objects to any alternate characterization.[2]

As demonstrated above, when Chrysler released this statement, not only had it known for many years that the defect in its AHRs posed a risk to drivers and their passengers, but it also knew that many consumers had suffered significant injuries as a result of the defect.

**Chrysler Conceals the Defect and Continues to Market Its Vehicles as Safe**

Despite its longstanding knowledge of the AHR defect, Chrysler took no action to notify consumers that its AHRs were defective and dangerous. In fact, Chrysler representatives denied the existence of the defect to consumers as a matter of course. ██████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

---

[2] Chmura, et al., *Injured Drivers Say 'Popping' Headrests Caused Concussions*, NBC6 South Fla., https://www.nbcmiami.com/news/local/injured-drivers-say-popping-headrests-caused-concussions/164751/ (last updated Dec. 21, 2018).



In keeping with this position, Chrysler continued to market and sell millions of vehicles as safe long after it had learned that the AHR defect posed a threat to consumers and, in fact, every motorist who shared the road with Chrysler vehicles. In promotional materials and advertising, Chrysler proclaimed that certain of the affected vehicles have "over 70 available safety and security features" and are equipped with "systems that give you confidence behind the wheel and help protect you and your passengers."[3] Chrysler promoted other affected vehicles as "equipped to protect" and to "care for future generations [and] meet your safety standards." In brochures for several of the affected vehicles, Chrysler identified its AHRs as "safety and security" features and further described them as "[a] standard and effective safety feature that can help stave off neck injuries." Ex. OO at 7. And finally, as noted above, Chrysler issued a public statement in 2018 expressly denying any impact on consumer safety, representing that "even in the rare event of inadvertent deployment there is no unreasonable risk of injury[,]" and that "[a]bsent such risk, there is no safety defect." *See* n.2, *supra* at 8.

Neither Chrysler nor Grammer took any action to correct these representations despite clear knowledge of the AHR defect. As a result, consumers have continued to purchase and lease the Class Vehicles and have lost the benefits of their bargains by paying a price premium for a product carrying a dangerous and latent design and manufacturing defect.

---

[3]  This language appears on multiple FCA branded websites. *See, e.g.,* https://www.bobboyddodge.com/2018-jeep-grand-cherokee-suv.htm; https://jeep.co.nz/vehicles/grand-cherokee/features/safety-and-security.

## Procedural History

Plaintiffs filed the original complaint in this action on February 27, 2020. [D.E. 1.] Plaintiffs amended their complaint once, filing the operative First Amended Complaint on March 23, 2020. [D.E. 10.] Chrysler moved to dismiss the First Amended Complaint [D.E. 31, 32, 52-54], and the Court denied that motion in its entirety on March 30, 2021 [D.E. 58]. In its Order, among other things, the Court held that Plaintiffs had stated claims for fraudulent concealment (under New York law), unjust enrichment, and violations of Florida and New York consumer fraud statutes and the Magnuson-Moss Warranty Act ("MMWA"). [D.E. 58.] The Court also held that Plaintiffs had standing to sue Chrysler even though their vehicles had not yet experienced uncommanded deployments. *See id.* at 9-14. As the Court highlighted, Plaintiffs were not alleging that their the AHR defect had "manifested" in their vehicles, but were instead alleging that the defect was present at the point of sale and they had therefore lost the benefits of their bargains with Chrysler, and thus suffered an economic injury, by purchasing Chrysler vehicles worth less than the price paid. *See id.*

Chrysler answered the First Amended Complaint on April 13, 2021 [D.E. 60.] Plaintiffs now move to certify a 49-state class on their claim for unjust enrichment; Florida and New York subclasses on their consumer fraud and Magnuson-Moss claims; and a New York subclass on their fraudulent concealment claim.

## ARGUMENT

"It is well established that class actions are a particularly appropriate and desirable means of redressing common claims for uniform legal violations that affect large numbers of persons in the same way." *Brown v. SCI Funeral Servs. of Fla., Inc.*, 212 F.R.D. 602, 603 (S.D. Fla. 2003). Federal district courts have broad discretion in deciding motions for class certification. *Moreno-Espinosa v. J&J AG Prods.*, 247 F.R.D. 686, 687-88 (S.D. Fla. 2007). "In reviewing a motion for class certification, the court is generally bound to take the substantive allegations of the complaint as true." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 671 (S.D. Fla. 2011). "While a district court's class certification analysis "may entail some overlap with the merits of the plaintiff[s'] underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Navelski v. Int'l Paper Co.*, 261 F. Supp. 3d 1212, 1215–16 (N.D. Fla. 2017) (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013)). Rather, "[m]erits questions may be considered to the extent—but only to the extent—

10

that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* (same; additional citations omitted).

# I.   PLAINTIFFS SATISFY THE FOUR PREREQUISITES OF RULE 23(A).

Rule 23(a) sets forth four prerequisites for class certification:  numerosity, commonality, typicality, and adequacy of representation.  *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 489 (S.D. Fla. 2003); *see* Fed. R. Civ. P. 23(a).  Plaintiffs here satisfy all four requirements.

## A.   The Putative Class of Chrysler Consumers Satisfies the Numerosity Requirement.

Rule 23(a)(1) requires plaintiffs to show that the proposed class is so numerous that joinder of all members would be impracticable.  *See* Fed. R. Civ. P. 23(a)(1). There is "no definite standard as to the size a given class must attain in order to satisfy Rule 23(a)(1)." *Tapken v. Brown*, No. 90-691-CIV, 1992 WL 178984, at *27 (S.D. Fla. Mar. 13, 1992). "While there is no fixed rule, a class size less than twenty-one is typically considered inadequate, while a class size of more than forty is generally adequate." *Gayle v. Meade*, No. 20-21553-CIV, 2020 WL 3041326, at *13 (S.D. Fla. June 6, 2020) (citing *Cheney,* 213 F.R.D. at 489–90).

"Practicability of joinder depends on many factors, including, for example, the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion." *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986). *"*In addition, where class members can be easily identified, joinder is more likely to be practicable." *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 132 (1st Cir. 1985).

Because this Court correctly held that class members were injured at the point of sale, rather than when they experienced an uncommanded deployment, all consumers who purchased or leased affected vehicles are potential class members. *See* Order Mot. to Dismiss 6, ECF No. 58. Accordingly, Plaintiffs define the class to include all consumers who currently own or lease, or who have owned or leased, one or more Class Vehicles, all of which are equipped with the defective AHR. *See* p. 2–3, *supra*. █████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████████████████And though Chrysler has argued throughout the course of this litigation that only a small percentage of defective Class Vehicles

---

[4] Plaintiffs not that the stipulations and documentation provided by Chrysler regarding total affected vehicles and specific vehicle make and model years has been inconsistent. █████████ ████████████████████████

have manifested that defect—a contention with which this Court disagreed—this argument has failed to persuade federal courts elsewhere, and should again be disregarded at the class certification stage. *See Alger*, 334 F.R.D. at 422 ("Even if the Court determined, *which it does not*, that Chrysler is correct that 'only a tiny percentage of these vehicles might' have defective AHR Systems, the class would still easily satisfy the requirements of Rule 23(a)(1).") (emphasis added);

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████

Most consumers who purchased Chrysler vehicles with defective AHRs can be easily identified using Chrysler's own records—Chrysler can identify purchasers and lessors of new and certified pre-owned vehicles by state and VIN number, and additional consumers of used vehicles can be identified from extended warranty and dealership repair records. ████████████████ ████████████ The parties can give notice to any other used vehicle owners through the claims process. The proposed class definition will allow all owners of Chrysler Class Vehicles to determine whether they are class members with a potential right to recover, as it identifies the model numbers and production periods for the subject units. *See Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 594 (C.D. Cal. 2008) (class ascertainable where definition identified automobile make, model, and production period).

## B. Plaintiffs and the Proposed Class Satisfy Commonality.

Rule 23(a)(2) requires class action plaintiffs to identify questions of law or fact common to the class. *See* Fed. R. Civ. P. 23(a)(2). "The threshold for commonality is not high[,]" *Cheney*, 213 F.R.D. at 490, and the plaintiff's burden is "light." *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 695 (S.D. Fla. 2015); *see, e.g.*, *Cardenas v. Toyota Motor Corp.*, 2021 WL 6926418, at *8 (S.D. Fla. Aug. 12, 2021) ("[T]he Eleventh Circuit has described the commonality requirement as a 'low hurdle' or a 'light burden,' as commonality 'does not require that all questions of law and fact raised be common.'") (citations omitted). The rule does not require that all class members have identical legal claims, *see Belin v. Health Ins. Innovations, Inc.*, 337 F.R.D. 544, 556 (S.D. Fla. 2021) (Singhal, J.), nor does it require that all questions of law or fact be common. *See Klewinowski v. MFP, Inc.*, No. 8:13-CV-1204-T-33TBM, 2013 WL 5177865, at *2 (M.D. Fla. Sept. 12, 2013). "[F]or purposes of Rule 23(a)(2) even a single [common] question will do[,]" though the question must generate answers that resolve a central issue of each claim in "one

stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011) (brackets in original; citation omitted).

"[C]ommonality 'is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members.'" *Belin*, 337 F.R.D. at 557 (citation omitted). "[W]here a common scheme of conduct has been alleged, the commonality requirement should be satisfied." *In re Checking Overdraft Litig.*, MDL No. 2036, 2011 WL 3158998, at *4 (S.D. Fla. Jul. 25, 2011); *see, e.g.*, *Cheney*, 213 F.R.D. at 490 ("Where a common scheme is alleged, common questions of law or fact will exist.").

This litigation gives rise to common questions which are clear and straightforward. As the court reasoned in *Alger*, the commonality standard "is 'easily' met in cases indistinguishable from the case here: where 'claims of all prospective class members involve the same alleged defect, covered by the same warranty, and found in vehicles of the same make and model.'" *Alger*, 334 F.R.D. at 423 (quoting *Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168, 1172 (9th Cir. 2010)). "Principally, a common question exists as to whether Class Vehicles suffered from a defective AHR System design." *Id.* at 423.

███████████████████████████████████████████████

This conclusion was confirmed by the plaintiff's expert in *Alger*, who opined that "the design in the AHR System in Class Vehicles is identical from an engineering standpoint." *Alger*, 334 F.R.D. at 423. Indeed, in *Alger*, the parties stipulated that the same design was used in seventy-eight make and model-year vehicles. *See Alger*, No. 2:18-cv-360 (E.D. Cal.), Stip. and Order, [D.E. 152].

Other common questions arise from Plaintiffs' claims against Chrysler: whether Chrysler engaged in objectively unfair or deceptive trade practices; whether those practices were likely to deceive the reasonable consumer; whether and when Chrysler knew about the defect; whether Chrysler had a duty to disclose its existence; whether Chrysler's AHRs were merchantable under state warranty statutes; and whether Plaintiffs and the class members paid a price premium for their vehicles as a result of Chrysler's practices. *See* Order Mot. to Dismiss 6, [ECF No. 58]; *see also Alger*, 334 F.R.D. at 424 (identifying various similar common questions based on the same defect).

All of these questions are capable of resolution in "one stroke." *Dukes*, 564 U.S. at 350. To be sure, Plaintiffs will prove the class claims with common evidence, focusing on Chrysler's conduct in disregarding, concealing, and failing to remedy the defect. Plaintiffs will show, among other things, that:

- ████████████████████████████████████████
  ██████████████;

- the defect inherent in the AHRs was widespread and common to all units ████
  ████████████████████████████████████████
  ████████████████████████████

- Chrysler knew the AHRs had the tendency to inadvertently deploy as early as 2009,
  ████████████████████████████████████;

- ████████████████████████████████████████
  ████████████████████████████████████

- ████████████████████████████████████████
  ████████████████████████████████████████

██████████████████████

- Chrysler denied the existence of the defect to consumers who complained or presented their vehicles for repair and in a public statement released in December 2018, ██████████████████████████████████████████████████████████████ ██████████████████████ *see* n.2, *supra* at 8.

- At all times relevant to the class claims, Chrysler promoted the AHR as a safety feature which would protect the driver's and front-seat passenger's heads and necks from injury, *see, e.g.*, Ex. YY at 2 (2011 Town and Country advertisement naming AHR as a highlighted safety feature); Ex. ZZ at 6 (2013 Chrysler 200 noting AHR as a safety feature designed "to reduce the chance of injury"); n.2, *supra* at 8 ("Active head restraints enhance vehicle safety.");

- Chrysler subjected all Class members to a continued risk of injury by failing to remedy the defect, ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ and

- Chrysler's conduct caused class members to lose the benefits of their bargains having overpaid for the Class Vehicles, ██████████████████; *see also* Order Mot. to Dismiss 6, ECF No. 58.

Accordingly, Plaintiffs have satisfied Rule 23(a)(2)'s commonality requirement.

### C. Plaintiffs' Claims Are Typical of Those of the Class.

Typicality and commonality are related, with commonality addressing "the group characteristics of the class as a whole" and typicality focusing on the named plaintiff's claims in relation to the class. *In re Terazosin Hydrochloride Litig.*, 220 F.R.D. 672, 686 n.23 (S.D. Fla. 2004). Thus, "[t]he test for typicality, like commonality, is not demanding." *Bruhl v. Price WaterhouseCoopers Int'l*, 257 F.R.D. 684, 689 (S.D. Fla. 2008). The central inquiry in determining whether a proposed class satisfies the typicality requirement is whether the class representative has "the same interest and the same injury as the class members." *Holzman v. Malcolm S. Gerald & Assocs., Inc.*, 334 F.R.D. 326, 331 (S.D. Fla. 2020). "Nonetheless, 'the typicality requirement is permissive: representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Sanchez-Knutson*, 310 F.R.D. at 539 (quoting *Alhassid v. Bank of Am., N.A.*, 307 F.R.D. 684, 697 (S.D. Fla. 2015)). Indeed, "[t]ypicality can exist 'despite substantial factual differences ... when there is a strong similarity of legal theories.'" *Belin*, 337 F.R.D. at 557 (quoting *Williams v. Mohawk Indus.,*

*Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009)).

Typicality is satisfied where, as here, the plaintiffs' claims "stem from the same event, practice, or course of conduct that forms the basis of the class claims and are based upon the same legal or remedial theory." *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 326 (S.D. Fla. 1996); *see, e.g.*, *Belin*, 337 F.R.D. at 557 (typicality satisfied where plaintiffs established that their claims "ar[o]se 'squarely' from the same pattern or practice and rest[ed] upon the same legal theory").

As described above, Plaintiffs' claims in this case arise from the same course of conduct and are based on the same legal theories as those brought on behalf of the proposed class. Plaintiffs and every member of the class purchased Chrysler vehicles equipped with defective AHRs. *See* p. 12–13, *supra*. ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████ Chrysler did not disclose the defect to any consumer or remedy the defect in any Class Vehicle; to be sure, Chrysler denies the defect's existence to this day. *See* n.2, *supra* at 8.

Plaintiffs and the class seek redress through common claims for fraudulent concealment, unjust enrichment, violations of the MMWA, NY GBL § 350, and FDUTPA. *See* FAC ¶¶ 141–55, 168–268. These claims are based on the common AHR defect and Chrysler's uniform scheme to conceal the defect from consumers. As this Court already found, Plaintiffs and the putative Class Members were injured at the point of purchase; thus, "variations in manifestation are no bar to class certification." *Alger*, 334 F.R.D. at 424; *see also* Order Mot. to Dismiss 6, ECF No. 58. Accordingly, Plaintiffs' claims and those of the putative class arise from the same course of conduct and are based on the same legal theories, thereby satisfying Rule 23(a)(3). *See, e.g.*, *James D. Hinson Elec. Contracting Co. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 643 (M.D. Fla. 2011) (plaintiffs satisfied typicality with claims arising from same practices and legal theories and were merely required to show that they "share the issues common to other class members").

### D. Plaintiffs and Their Counsel Will Fairly and Adequately Represent the Interests of the Class.

To satisfy Rule 23(a)(4), the representative parties must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied when the class representatives have (1) no interests antagonistic to the rest of the class, and (2) counsel who are "qualified, experienced, and generally able to conduct the proposed litigation." *Cheney,* 213 F.R.D. at 495. "'Adequate representation is presumed in the absence of contrary evidence.'" *In re 1*

*Glob. Cap. LLC*, No. 18-19121-RAM, 2020 WL 1486791, at *4 (Bankr. S.D. Fla. Mar. 23, 2020) (citation omitted).

### 1. Plaintiffs Do Not Have Interests Antagonistic to the Rest of the Class.

"Where the named plaintiffs in a class action are seeking the same type of relief for themselves as they seek for class members, the adequacy of representation requirement of Rule 23(a)(4) of the Federal Rules of Civil Procedure is satisfied." *Tefel v. Reno*, 972 F. Supp. 608, 617 (S.D. Fla. 1997). Plaintiffs have no interests antagonistic to those held by the rest of the class.  All class members purchased Chrysler vehicles equipped with inherently defective AHRs, which presented an unnecessary risk injury. *See* p. 3–7 *supra*. Correspondingly, Chrysler did not disclose to any class member the existence of the defect or offer any class member a remedy that would prevent future uncommanded deployments. *Id.*  All class members, that is, were subjected to the same risk and deceived in the same manner. Thus, the critical issues in this case—the existence of the defect and Chrysler's failure to appropriately disclose or remedy it—are common to Plaintiffs' claims and the claims of the class.  "If the Plaintiffs succeed, the benefits will inure to all class members." *Id*. Win or lose, Plaintiffs' claims will turn on the same common proof as those of every other class member.

Plaintiffs have participated in discovery and been actively involved in this litigation from the outset. They have responded to all document requests and interrogatories and have assisted in the investigation of the facts underlying their claims. Additionally, Chrysler has deposed each plaintiff and each has testified that he or she understands and have fulfilled his or her duties as a class representative. *See* Decls. of Named Plaintiffs, Composite Ex. BBB. Plaintiffs have suffered losses as a result of Chrysler's conduct and are prepared to fulfill their duties in this litigation on behalf of the putative class to trial and beyond. *Id*. Accordingly, Plaintiffs have satisfied the requirements of Rule 23(a)(4).

### 2. Plaintiffs' Counsel Are Qualified and Experienced Attorneys Who Are More Than Capable of Conducting the Proposed Litigation.

The second prong of the adequate representation test is also satisfied. Under Rule 23(g)(1)(c), the Court "must consider" (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(c)(i). Additionally, the Court "may consider any other matter pertinent to counsel's ability

17

to fairly and adequately represent the interests of the class…." Fed. R. Civ. P. 23(g)(1)(c)(ii).

Applying these standards, Plaintiffs' counsel easily satisfy the requirements of Rule 23(g). Plaintiffs' counsel, the law firm of Kozyak Tropin & Throckmorton LLP, has extensive knowledge of and experience in both complex class action litigation and cases involving consumer fraud. *See* Benjamin D. Widlanski Dec., Ex. CCC. Co-counsel in this case, the law firms of Podhurst Orseck, P.A.; Searcy Denney Scarloa Barnhart & Shipley P.A.; The Law Offices of George Franjola; and Santiago Burger LLP are experienced and successful in the litigation of complex commercial and class actions.

Additionally, the above-named firms are well respected in the communities that they serve. "[T]he single most important factor considered by the courts in determining the quality of the representative's ability and willingness to advocate the cause of the class has been the caliber of the plaintiff's attorney." 1 NEWBERG ON CLASS ACTIONS 3d (1992) § 3.24 at 3-133 n.353. *See also Griffin v. Carlin*, 755 F. 2d 1516, 1533 (11th Cir. 1985) (question of adequacy most often "involve[s] questions of whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation and of whether plaintiffs have interests antagonistic to those of the rest of the class"). Plaintiffs' counsel have overseen litigation strategy, the briefing and argument of motions, including briefing of Chrysler's motions to dismiss, and the vigorous pursuit of discovery. The efforts of Plaintiffs' counsel to date confirm that they are committed to the vigorous prosecution of this action and possess the skills necessary for such efforts.

## II. PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(b)(2)–(3).

In addition to meeting the four requirements of Rule 23(a), a plaintiff seeking class certification must satisfy one of the subsections of Rule 23(b). *Cheney*, 213 F.R.D. at 489. Plaintiffs here seek certification under Rule 23(b)(2) and 23(b)(3). Under Rule 23(b)(3), which Plaintiff addresses in sections II.A and II.B below, certification is appropriate if (1) common questions of law or fact predominate over questions affecting only individual class members, and (2) class treatment is superior to other methods of adjudication. *See* Fed. R. Civ. P. 23(b)(3). To satisfy Rule 23(b)(2), addressed in Section II.C, Plaintiffs must establish that the Defendant "has acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Each requirement is satisfied here.

A. **Common Questions of Law and Fact Predominate Because Legal and Factual Questions Will Be Resolved with Proof Common to Plaintiffs and the Class.**

For common questions of law or fact to predominate over individualized questions, "the issues in the class action that are subject to generalized proof, and [are] thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. at 694. "Common questions need only predominate; they need not be dispositive of the litigation." *Id.* "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Checking Overdraft Litig.*, 2011 WL 3158998, at *7. Indeed, "[w]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to individual class members…." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). This standard is often "readily met" in consumer fraud cases. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997).

"[C]ourts generally focus on issues related to liability in determining predominance." *Aranaz v. Catalyst Pharm. Partners Inc.*, 302 F.R.D. 657, 667 (S.D. Fla. 2014) (citing, *inter alia*, *In re Alexander Grant & Co. Litig.*, 110 F.R.D. 528, 534 (S.D. Fla. 1986) ("Courts generally focus on the liability issue in deciding whether the predominance requirement is met, and if the liability issue is common to the class, common questions are held to predominate over individual questions.")); *see Herrera v. JFK Med. Ctr. Ltd. P'ship*, 648 F. App'x 930, 936 (11th Cir. 2016) ("Typically, even if courts must confront some individualized damages issues, common issues predominate if liability can be determined on a class-wide basis."). "In order to determine whether common questions predominate, '[the court is] called upon to examine the cause[s] of action asserted in the complaint on behalf of the putative class.'" *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1234 (11th Cir. 2000) (quotation omitted).

Here, "[t]here is a single, central common issue of liability": whether the AHRs in certain Chrysler model vehicles were defective and whether Chrysler, with knowledge of the defect, failed to disclose its presence to consumers. *See Tershakovec v. Ford Motor Co.*, 546 F. Supp. 3d 1348, 1377 (S.D. Fla. 2021) (finding predominance requirement satisfied based on "Ford's uniform

19

course of conduct"). Irrespective of the individual issues that may arise, the litigation will focus on Chrysler's common course of conduct in marketing a defective product and placing it into the stream of commerce; failing to disclose the defect in the AHRs once discovered; failing to implement a recall program that remedied the defect; and deceiving consumers by representing that the AHRs were a safety feature that would protect their heads and necks while they operated their vehicles. *See Alger*, 334 F.R.D. at 425 (collecting automobile defect cases where predominance was found based on similar conduct); *see also Tershakovec*, 546 F. Supp. 3d at 1377–78. The key issues at trial will be whether the defect existed; whether the defect rendered the AHRs unmerchantable; whether and when Chrysler knew about the defect; whether Chrysler had a duty to disclose the defect; whether Chrysler, in fact, disclosed the defect; if not, whether Chrysler's conduct was objectively deceptive or unfair; and whether Plaintiff and the class were injured as a result.

Class litigation of the fraudulent concealment claim will focus on Chrysler's knowledge of the defect and its decision to withhold what it knew despite a clear duty to disclose. *See, e.g.*, *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 234 (S.D.N.Y. 2015) ("[T]he basic elements of a fraudulent concealment claim are generally: (1) a duty to disclose on the part of defendant; (2) concealment or failure to disclose by defendant; (3) reliance by the plaintiff (or inducement of plaintiff to act); (4) damages; and (5) proximate causation."); *Town of New Castle v. Yonkers Cont. Co.*, 131 F.R.D. 38, 42 (S.D.N.Y. 1990) (agreeing with "authority which holds that the common questions with regard to fraudulent concealment predominate over individual questions of knowledge and due diligence"). Individual questions will not arise because Chrysler concealed the AHR defect from all consumers. While some class members may have experienced uncommanded AHR deployments, no class member knew that their AHRs were defective in their design. knew that their AHRs had experienced uncommanded deployments, but no class member knew that their AHRs were defective in their design.

With regard to the Florida Plaintiffs' FDUTPA claims, individual questions of reliance and causation will not arise because Florida courts apply an objective standard to FDUTPA claims, asking whether a defendant's deceptive conduct would deceive a reasonable consumer. *See Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567 (11th Cir. 2009); *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 691 (S.D. Fla. 2014). Accordingly, the FDUTPA statute does not require individualized showings of reliance. *See, e.g., Office of Atty. Gen., Dep't of Legal Affairs*

*v. Wyndham Int'l, Inc.*, 869 So. 2d 592, 598 (Fla. 1st DCA 2004) ("A deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue."). Similarly, the circumstances of individual consumers' purchases will not come into play because Plaintiffs' claims focus on a standardized course of conduct by Chrysler. *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016) ("Because a plaintiff asserting a FDUTPA claim need not show actual reliance on the representation or omission at issue, the mental state of each class member is irrelevant.") (internal quotation marks omitted). This is particularly so because neither the Florida Plaintiffs nor the class members will be required to show that the defect manifested or resulted in injury to person or property—each consumer is entitled to recover the benefit of his or her bargain with Chrysler because the Chrysler vehicles they purchased were not worth the value negotiated at the point of sale. *See* Order Mot. to Dismiss 6, ECF No. 58; *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 1168, 1174 (8th Cir. 2011) (plaintiffs adequately alleged economic injury where all defective pipes carried same defect, regardless of manifestation).

Individual questions will not arise from certification of Plaintiffs' MMWA claims because the identical implied warranty applies to all Class Vehicles. State implied warranty laws are based on the same section of the UCC, the elements of which are objective and focus on the merchantability of defendant's product, not any one individual consumer's conduct. *See, e.g.,* *Salas v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 15-8629 FMO (EX), 2019 WL 1940619, at *10 (C.D. Cal. Mar. 27, 2019) (individual issues did not predominate on implied warranty claim because claim's success or failure depended on proof of defect); *compare* U.C.C. § 2-314 *with* N.Y. U.C.C. Law § 2-314 *and* Fla. Stat. § 672.314. As such, all state implied warranty claims require proof that an implied warranty existed and was breached; here, that the Class Vehicles were not merchantable when they were sold or manufactured.     Because Chrysler's breaches of warranty all arise from the same defect, the parties will litigate the class claims without reference to individual circumstances.

Finally, the question of damages in this case is a common, class-wide issue which predominates over any individualized question, including any individual damages calculations. ███████████████████████████████; *see also Tershakovec*, 546 F. Supp. 3d at 1378–79 (approving Mr. Stockton's methodology in automobile defect class certification

analysis). Here, Plaintiffs' expert, Edward Stockton, opines that the amount of overpayment can be measured on a class-wide basis to determine the economic harm consumers suffered at the point of purchase as a result of the AHR defect. ██████████████████████████████ "The 'black letter rule' recognized in every circuit is that "individual damage calculations generally do not defeat a finding that common issues predominate." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016) (quoting William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 4:54 (5th ed.)). Proof of a common and knowingly concealed defect will establish Chrysler's liability, and consequently, Plaintiffs' entitlement to damages. "[I]ndividualized damages calculations are insufficient to foreclose the possibility of class certification, especially when, as here, the central liability question is so clearly common to each class member." *Carriuolo*, 823 F.3d at 988; *see also Tershakovec*, 546 F. Supp. 3d at 1378–79 (finding in a similar vehicle defect class action that because Mr. Stockton's "model calculates how much a class member 'overpaid' for his vehicle due to Ford's misrepresentations and omissions, it 'is the translation of the legal theory of the harmful event into an analysis of the economic impact of that event,' and thus satisfies Rule 23(b)." (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 38 (2013)).

Common questions will predominate over individualized issues. Plaintiffs have therefore satisfied Rule 23(b)(3).

### B.   A Class Action Would Be Superior to the Adjudication of Individual Claims.

Federal district courts analyzing the superiority requirement of Rule 23(b) consider four factors to identify the superior method of adjudication: (1) the interest of individual class members in controlling the prosecution and defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against any members of the class; (3) the desirability or undesirability of concentrating litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *See* Fed. R. Civ. P. 23(b)(3). "No single element is determinative[,] … and this is not meant to be an exhaustive list of the factors that the Court should consider when determining whether to allow a Rule 23(b)(3) class action." *Walco*, 168 F.R.D. at 337.

### 1.   Individual class members' interest in separate actions and the extent and nature of litigation already commenced

With millions of class members represented by Plaintiffs, each holding a claim worth less than $2,000, the adjudication of individual lawsuits in fora nationwide is patently less desirable and efficient than resolution of all claims through the class action device. *See, e.g.*, *Williams v.*

*Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 675 (S.D. Fla. 2012) ("[E]ven a large and complex class action lawsuit would be more manageable, from the Court's perspective, than being inundated with thousands of individual lawsuits with overlapping factual allegations and all involving the same proof to establish an identical illicit scheme against the same Defendants."); 4 H. Newberg, Newberg on Class Actions § 21.14 (1992) (individuals only have an interest in prosecuting individual claims that are large enough to justify expending attorneys' fees and litigation costs). Thus, if a class is not certified, there will likely be no recourse for millions of consumers and Chrysler's misconduct would go largely unaddressed and undeterred.

As to the nature and status of litigation already commenced, this is one of four class actions pending in federal courts involving Chrysler's defective AHRs. The plaintiff in the first action, *Alger v. FCA USA LLC*, filed suit in the Eastern District of California on behalf of a putative class of California consumers who had purchased Chrysler vehicles with defective AHRs. *See* Compl. [D.E. 1], *Alger v. FCA USA LLC*, No. 2:18-cv-360 (E.D. Cal.). The court certified a California class on claims for violations of California's Consumer Legal Remedies Act and Unfair Competition Law and for breaches of express and implied warranties. *See Alger v. FCA US LLC*, 334 F.R.D. 415 (E.D. Cal. 2020). Chrysler's motion for summary judgment in *Alger* is now pending. The plaintiff in the second action, *Walton v. Grammer Industries, Inc.*, filed suit in the Eastern District of Michigan seeking certification of nationwide and Pennsylvania classes against Grammer Industries, Inc., the manufacturer of Chrysler's AHRs. *See* Compl. [D.E. 1], *Walton v. Grammer Industries, Inc.*, No. 2:20-cv-12298 (E.D. Mich.). The plaintiff in *Walton* recently amended his complaint. *See* First Amended Complaint [D.E. 34], *Walton*, No. 2:20-cv-12298 (E.D. Mich.). The plaintiffs in the third action, *Costa v. FCA US LLC*, filed suit against Chrysler in the District of Massachusetts seven months after Plaintiffs filed their original complaint in this action. *See* Compl. [D.E. 1], *Costa v. FCA US LLC*, No. 1:20-cv-11810 (D. Mass). The plaintiffs' motion for class certification in *Costa* was fully briefed as of January 6, 2022. *See id.*, Pl.'s Reply in Supp. of Class Cert., [D.E. 88].

Neither *Alger* nor *Walton* overlaps with this action. The plaintiff in *Alger* has certified only a California class, and Plaintiffs here seek certification of Florida and New York subclasses, and a nationwide class excluding California consumers. *See* FAC ¶ 126, [D.E. 10]. In *Walton*, though the plaintiff seeks to certify Pennsylvania and nationwide classes, the plaintiff brings claims against a different defendant, and none against Chrysler. *Costa* overlaps with this class action only

23

to the extent that both sets of plaintiffs include Massachusetts consumers in their class definitions. Should the plaintiffs in *Costa* certify a Massachusetts-only class before this Court considers certification of a nationwide class, the class definition here can be amended to exclude Massachusetts. Should this Court certify first, *Costa*, the later-filed case, would be subsumed into this action.

The presence of a "few other suits" is generally not sufficient to defeat superiority. Newberg on Class Actions § 4:70; *see CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1096 (10th Cir. 2014) ("the mere existence of individual actions brought by putative class members does not necessarily defeat a claim for superiority … it is enough that class treatment will 'achieve economies of time, effort, and expense, and promote uniformity of decision'"). And "the more claimants there are, the more likely a class action is to yield substantial economies in litigation." *Butler v. Sears Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013).

Litigating these claims individually would also maximize the risk of inconsistent outcomes for consumers. *See, e.g.*, *Souter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 218 (E.D. Va. 2015) (citing "risk generating inconsistent outcomes on the same essential facts"); *Butto v. Collecto Inc.*, 290 F.R.D. 372, 386 (E.D.N.Y. 2013) (citing "inefficiency, high costs, and the risk of inconsistent outcomes posed" by litigating series of individual actions). In a class action, by contrast, the Court will resolve the vast majority of Chrysler consumers' claims efficiently and with one stroke.

## 2. Difficulties likely to be encountered in the management of a class action

"[Manageability] concern[s] will rarely, if ever, be in [themselves] sufficient to prevent certification of a class." *Klay*, 382 F.3d at 1272; *see also* Newberg § 4:72. "Courts are generally reluctant to deny class certification based on speculative problems with case management." *Managed Care Litig.*, 209 F.R.D. at 692. Indeed, the Eleventh Circuit has held: "[W]here a court has already made a finding that common issues predominate over individualized issues, we would be hard pressed to conclude that a class action is less manageable than individual actions." *Klay*, 382 F.3d at 1273; *see Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1184 (11th Cir. 2010) ("[T]he predominance analysis has a 'tremendous impact on the superiority analysis . . . for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims[.]'") (citation omitted).

The management of this case as a class action will not present any particular difficulty. The

laws of the states in which Plaintiffs seek to certify consumer classes are in general agreement, obviating the need to analyze variances in state law. The alternative to class certification would likely result in a "multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).

On their unjust enrichment claims, where Plaintiffs seek certification of multistate classes, "[t]here is general agreement among courts that the 'minor variations in the elements of unjust enrichment under the laws of the various states ... are not material and do not create an actual conflict.'" *In re Checking Acct. Overdraft Litig.*, 307 F.R.D. 656, 675 (S.D. Fla. 2015) (quoting *Pa. Emp. Benefit Trust Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 477 (D. Del. 2010)). "Application of the unjust enrichment doctrine has a 'universal thread,' . . . and the claim is well-suited for multi-state class treatment by virtue of its uniform availability and focus on the defendant's ill-gotten gain." *Id.* (internal citation and quotations omitted); *see also, e.g.*, *Keilholtz v. Lennox Hearth Prod. Inc.*, 268 F.R.D. 330, 341 (N.D. Cal. 2010) ("Here, the variations among some states' unjust enrichment laws are not material because they do not significantly alter the central issue or the manner of proof in this case. Common to all class members and provable on a class-wide basis is whether Defendants unjustly profited from the sale of their fireplaces."); *In re Abbott Labs. Norvir Anti–Trust Litig.*, 2007 WL 1689899, at *9–10 (N.D. Cal. 2007) (certifying nationwide unjust enrichment class, finding that "the variations among some states' unjust enrichment laws do not significantly alter the central issue or the manner of proof"); *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. at 697 & n.40 (S.D. Fla. 2004) ("The standards for evaluating each of the various states classes' unjust enrichment claims are virtually identical" and minor variation in states' laws "present[ed] no obstacle to class certification."); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 518 (E.D. Mich. 2003) (characterizing the standards of unjust enrichment around the country as "virtually identical").

The forty-nine states' laws at issue here can be organized into three groups, each following one articulation of the common law of unjust enrichment. *See* Survey of Unjust Enrichment Law, attached as Ex. DDD. By organizing the class claims into these two unjust enrichment classes, the Court will be able to litigate the class unjust enrichment claims without addressing material conflicts or confronting manageability issues. Finally, as established above, *see* p. 12–14, *supra*, common issues clearly predominate over individual ones such that the Court will not need to oversee "mini trials" addressing individualized questions of fact or law. A class action is the far

superior method of adjudication.

**C.      The Court Should Certify a Rule 23(b)(2) Class for Injunctive Relief.**

To secure certification a class for injunctive relief, Plaintiffs must establish that Defendant "has acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). An injunctive class should be certified to require Chrysler to notify consumers of the defect and repair or replace its defective AHR systems. FDUPTA authorizes anyone aggrieved by a violation of the statute to pursue injunctive relief. *See* Fla. Stat. § 501.211(1).

Plaintiffs assert—and discovery has confirmed—that all AHRs in the Class Vehicles, including replacement headrests installed as part of a warranty or other repair, exhibit the same defect in their manufacture and design. ████████████ Moreover, when a headrest fails and requires replacement, Chrysler has a uniform policy of replacing the headrest with a new one exhibiting the same defect. Accordingly, Plaintiffs seek certification of a Rule 23(b)(2) class to require Chrysler to replace all defective headrests with non-defective headrests.

## <u>CONCLUSION</u>

The Court should certify the classes defined by Plaintiffs pursuant to Rule 23(a), (b)(2), and (b)(3), designating Plaintiffs as Class Representatives, and designating Benjamin J. Widlanski and the law firm of Kozyak Tropin & Throckmorton as Class Counsel.

## <u>REQUEST FOR HEARING</u>

Plaintiffs request a hearing on their motion for class certification. Plaintiffs believe a hearing is warranted due to the number and complexity of the issues presented. A hearing will assist the Court in resolving these issues.  Plaintiffs estimate that approximately one and a half hours will be required for argument.

| | |
|---|---|
| /s/*Benjamin Widlanski*<br>Benjamin Widlanski, Esq.<br>Florida Bar No. 1010644<br>bwidlanski@kttlaw.com<br>Harley S. Tropin, Esq.<br>Florida Bar No. 241253<br>hst@kttlaw.com<br>Gail McQuilkin, Esq.<br>Florida Bar No. 969338<br>gam@kttlaw.com<br>Rachel Sullivan, Esq.<br>Florida Bar No. 815640<br>rs@kttlaw.com<br>Robert J. Neary, Esq.<br>Florida Bar No. 81712<br>rn@kttlaw.com<br>Katherine Mitchell, Esq.<br>Florida Bar No. 1018647<br>kmitchell@kttlaw.com<br>**KOZYAK TROPIN &**<br>**THROCKMORTON LLP**<br>2525 Ponce de Leon Blvd., 9th Floor<br>Coral Gables, Florida 33134<br>Telephone: (305) 372-1800<br>Facsimile: (305) 372-3508<br>*Counsel for Plaintiffs* | Peter Prieto, Esq.<br>Florida Bar No. 501492<br>pprieto@podhurst.com<br>John Gravante, III, Esq.<br>Florida Bar No. 617113<br>jgravanteiii@podhurst.com<br>Matthew Weinshall, Esq.<br>Florida Bar No. 84783<br>mweinshall@podhurst.com<br>Alissa Del Riego, Esq.<br>Florida Bar No. 99742<br>adelriego@podhurst.com<br>**PODHURST ORSECK, P.A.**<br>SunTrust International Center<br>One S.E. 3rd Ave., Suite 2700<br>Miami, Florida 33131<br>Telephone: 305-358-2800<br>Facsimile: 305-358-2382<br>*Counsel for Plaintiffs* |
| Jack Scarola, Esq.<br>Florida Bar No. 169440<br>jsx@searcylaw.com<br>**SEARCY DENNEY SCAROLA**<br>**BARNHART & SHIPLEY PA**<br>2139 Palm Beach Lakes Blvd.<br>West Palm Beach, Florida 33409<br>Telephone: (561) 686-6300<br>Fax: (561) 383-9451<br>*Counsel for Plaintiffs* | Michael Burger, Esq.<br>mike@litgrp.com<br>**SANTIAGO BURGER LLP**<br>2280 East Avenue<br>Rochester, NY 14610<br>Telephone: (585) 563-2400<br>Facsimile: (585) 563-7526<br>*Counsel for Plaintiffs* |

27

| George Franjola, Esq. <br> gfranjola@franjolalaw.com <br> Florida Bar No. 333271 <br> **LAW OFFICES OF GEORGE** <br> **FRANJOLA** <br> 233 SW 3rd St., Suite 3 <br> Ocala, Florida 34471 <br> Telephone:     (352) 812-0462 <br> *Counsel for Plaintiffs* | |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true copy of the foregoing was filed electronically via CM/ECF on

the 5th day of April 2022, and served by the same means on all counsel of record.

By:  _/s/ *Benjamin Widlanski*_