**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 0:20-cv-60432-SINGHAL**

JASON NUWER, MARK MINKOWITZ, AMARILLIS GINORIS, CHRISTINA VIGOA, and KEVIN VAN ALLEN on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

FCA US LLC f/k/a/ CHRYSLER GROUP LLC, a Delaware limited liability company, and GRAMMER INDUSTRIES, INC. a South Carolina corporation,

      Defendants.

_____

**FCA US LLC'S RESPONSE IN OPPOSITION TO**
**<u>PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>**

## **TABLE OF CONTENTS**

I.   **INTRODUCTION** ............................................................................................. 1

II.  **FACTS** .......................................................................................................... 3

   A.   Federal Motor Vehicle Safety Standards and the Development of the Active Head Restraint System. ........................................................................................ 3

   B.   The Grammer AHR Design. ........................................................................... 3

   C.   Grammer's Rigorous Pre-Launch Testing and Validation. ................................... 3

   D.   Inadvertent Deployments From Multiple Causes. ............................................. 4

   E.   Inadvertent Deployment Caused By Environmental Stress Cracking. .............. 5

   F.   Vehicles Potentially Affected. ........................................................................ 6

   G.   FCA US Issued an Extended Warranty for the AHR ........................................ 6

   H.   The Proposed Class Representatives and Their Claims. .................................... 7

      *i.   Plaintiff Amarillis Ginoris* ........................................................................ 7

      *ii.   Plaintiff Jason Nuwer* ............................................................................ 8

      *iii.   Plaintiff Van Allen* ............................................................................... 8

III. **ARGUMENT** .................................................................................................. **8**

   A.   PLAINTIFFS LACK STANDING TO REPRESENT THE PROPOSED CLASS. ............. 9

      *i.   Plaintiffs Cannot Raise Claims For Products They Did Not Purchase or Lease.* .......... 9

      *ii.   Plaintiffs Cannot Assert Claims Under The Laws Of States Other Than Their Own.* ... 11

   B.   PLAINTIFFS HAVE NOT MET THE STATUTORY REQUIREMENTS TO CERTIFY A MAGNUSON-MOSS CLASS ................................................................................. 12

   C.   THE PUTATIVE CLASS IS NOT ASCERTAINABLE ................................................. 12

   D.   INDIVIDUAL ISSUES PREDOMINATE ON ALL OF PLAINTIFFS' CLAIMS. .......... 14

      *i.   Plaintiffs Have Not Established That State Laws Are Uniform.* ................................ 15

      *ii.   Whether the Subject Vehicles Are "Defective" Is Not a Common Issue.* ................... 15

      *iii.   Whether FCA US Had Knowledge is Not a Common Issue.* ....................................... 16

      *iv.   Whether The AHR Poses a Safety Risk is Not Common.* ............................................ 18

ii

v.   *Materiality, Deception, And Actual Injury Are Individual Issues Under New York Law.* 19

vi.  *Materiality, Actual Deception, And The Likelihood Of   Deception Are Individual Issues Under Florida Law.* ................................................................. 22

vii. *Individual Issues Predominate On Plaintiffs' Unjust Enrichment Claims.* ................. 23

viii. *Statutes of Limitations Raise More Individual Issues.* ................................................. 24

ix.  *Plaintiffs Have No Classwide Measure Of Damages.* ................................................. 25

E.   PLAINTIFFS' REQUEST FOR A 23(B)(2) INJUNCTIVE RELIEF CLASS SHOULD BE DENIED. ................................................................................................................. 27

F.   THE EASTERN DISTRICT OF CALIFORNIA'S *ALGER* DECISION IS DISTINGUISHABLE ................................................................................................. 28

**IV.  CONCLUSION** ................................................................................................. **28**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*,
  938 F.3d 1170, 1179 (11th Cir. 2019) ........................................................................ 26

*Abraham v. Volkswagen of Am., Inc.*,
  795 F.2d 238, 246 (2d Cir. 1986) .............................................................................. 11

*Alger v. FCA US LLC*,
  334 F.R.D. 415 (E.D. Cal. 2020) .............................................................................. 26

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) .................................................................................................. 14

*Andersen v. Atl. Recording Corp.*,
  2010 U.S. Dist. LEXIS 44168 (D. Or. May 4, 2010) ............................................... 14

*Arrendondo v. Neven*,
  763 F.3d 1122 (9th Cir. 2019) .................................................................................. 17

*Boelens v. Redman Homes, Inc.*,
  748 F.2d 1058 (5th Cir. 1984) .................................................................................. 11

*Breakstone v. Caterpillar, Inc.*,
  No. 09-23324, 2010 U.S. Dist. LEXIS 142220 (S.D. Fla. May 26, 2010) .............. 13

*Burrows v. Purchasing Power, LLC*,
  2012 U.S. Dist. LEXIS 186556 (S.D. Fla. Oct. 18, 2012) ....................................... 21

*Carlson v. General Motors Corp.*,
  883 F.2d 287 (4th Cir. 1989) .................................................................................... 11

*Churchill Village, L.L.C. v. General Electric*,
  361 F.3d 566 (9th Cir. 2004) .................................................................................... 11

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) .................................................................................................... 24

*Cordoba v. DirecTV, LLC*,
  942 F.3d 1259 (11th Cir. 2019) ................................................................................ 13

iv

*Da Air Taxi LLC v. Diamond Aircraft Indus.*, No. 09-60157-CIV-UNGARO,
  2009 U.S. Dist. LEXIS 139017 (S.D. Fla. Nov. 4, 2009) ........................................................ 12

*Daigle v. Ford Motor Co.*,
  2012 U.S. Dist. LEXIS 106172 (D. Minn. July 31, 2012) ...................................................... 22

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) ................................................................................................................ 9

*Deere Constr. v. Cemex Constr. Materials Florida, LLC*,
  2016 U.S. Dist. LEXIS 193561 (S.D. Fla. Dec. 1, 2016) ...................................................... 21

*Egwuatu v. South Lubes, Inc.*,
  976 So. 2d 50 (Fla. Dist. Ct. App. 2008) .............................................................................. 21

*Floyd v. Am. Honda Motor Co.*,
  966 F.3d 1027 (9th Cir. 2020) ............................................................................................... 12

*Frank v. DaimlerChrysler Corp.*,
  292 A.D.2d 118 (App. Div. 2002) .................................................................................. 20, 25

*Garcia v. Kashi Co.*,
  43 F. Supp. 3d 1359(S.D. Fla. 2014) ...................................................................................... 9

*Harris v. Nortek Glob. HVAC LLC*,
  No. 14-21884, 2016 U.S. Dist. LEXIS 18795 (S.D. Fla. Jan. 29, 2016) ..................... 12, 13, 25

*In re Baycol Prods. Litig.*,
  218 F.R.D. 197 (D. Minn. 2003) ............................................................................................ 17

*In re Checking Account Overdraft Litig.*,
  694 F. Supp. 2d 1302 (S.D. Fla. 2010) .................................................................................. 11

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
  No. 16-MDL-02744, Dkt. 325 (E.D. Mich. March 7, 2019) .................................................. 21

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*,
  2012 U.S. Dist. LEXIS 13887(D.N.J Feb. 6, 2012) ...................................................... 21, 22, 23

*In re GM LLC Ignition Switch Litig.*,
  257 F. Supp. 3d 372(S.D.N.Y. 2017) ..................................................................................... 20

*In re Takata Airbag Prods. Liab. Litig.*,
  396 F. Supp. 3d 1101 (S.D. Fla. 2019) .................................................................................... 9

*In re Tropicana Orange Juice Mktg. & Sales Pracs. Litig.*,

    2018 U.S. Dist. LEXIS 9797 (D.N.J. Jan. 22, 2018) ............................................................. 22

*In re Vioxx Products Liab, Litig.*,

    239 F.R.D. 450 (E.D. La. 2006).................................................................................................. 17

*Jackson v. Anheuser-Busch Inbev SA/NV, LLC,*

    No. 20-cv-23392, 2021 U.S. Dist. LEXIS 155556 (S.D. Fla. Aug. 18, 2021) ........................ 12

*Jim Moore Ins. Agency, Inc. v. State Farm Mut. Auto. Ins. Co.*,

    2003 U.S. Dist. LEXIS 25550  (S.D. Fla. May 6, 2003) ........................................................ 23

*Kia Motors Am. Corp. v. Butler,*

    985 So. 2d 1133 (Fla. 3d DCA 2008) ................................................................................ 13, 21

*Koch v. Greenberg*,

    14 F. Supp. 3d 247 (S.D.N.Y. 2014).......................................................................................... 19

*Leon v. Continental AG*,

    301 F. Supp. 3d 1203 (S.D. Fla. 2017) ....................................................................................... 9

*Lewis v. Casey*,

    518 U.S. 343 (1996)..................................................................................................................... 9

*Lewis v. Mercedes-Benz United States*,

    530 F. Supp. 3d 1183 (S.D. Fla. 2021) ............................................................................... 10, 12

*Maciel v. BMW of N. Am. LLC*,

    2021 U.S. Dist. LEXIS 34311 (E.D.N.Y. Feb. 23, 2021)......................................................... 25

*Marshall v. Hyundai Motor Am.*,

    334 F.R.D. 36 (S.D.N.Y. 2019) ................................................................................................ 19

*Martin v. Ford Motor Co.*,

    292 F.R.D. 252 (E.D. Pa. 2013)................................................................................................ 14

*Mazza v. Am. Honda Motor Co.*,

    666 F.3d 581 (9th Cir. 2012) ..................................................................................................... 17

*McManus v. Fleetwood Enters.*,

    320 F.3d 545 (5th Cir. 2003) ..................................................................................................... 26

*Melton v. Century Arms, Inc.*,

    No. 16-21008, 2018 U.S. Dist. LEXIS 203026 (S.D. Fla. Nov. 28, 2018) ............................... 13

*Merck Eprova AG v. BrookStone Pharm.*, LLC,

    920 F. Supp. 2d 404 (S.D.N.Y. 2013) ...................................................................... 19

*Nuwer v. FCA US Ltd. Liab. Co.*,

    552 F. Supp. 3d 1344 (S.D. Fla. 2021) .................................................................... 20

*Ohio State Troopers Ass'n v. Point Blank Enters.*,

    481 F. Supp. 3d 1258 (S.D. Fl. 2020) ............................................................... passim

*OSI, Inc. v. U.S.*, 285 F.3d 947 (11th Cir. 2002) .......................................................... 9

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,

    85 N.Y.2d 20 (N.Y. 1995) ...................................................................................... 19

*Pop's Pancakes, Inc. v. NuCO2, Inc.*,

    251 F.R.D. 677 (S.D. Fla. 2008) ............................................................................ 21

*Rollins Inc., v. Butland*,

    951 So. 2d 860 (Fla. 2d DCA 2006) ...................................................................... 23

*Sabatano v. Iovate Health Scis. U.S.A. Inc.*,

    *No. 19 CV 8924 (VB)*, 2020 U.S. Dist. LEXIS 109265 (S.D.N.Y. June 22, 2020) ................. 19

*Sacred Heart Health Sys. v. Humana Military Healthcare Servs.*,

    601 F.3d 1159 (11th Cir. 2010) .............................................................................. 14

*Simmons v. Ford Motor Co.*, No. 18-CV-81558-RAR, 2

    022 U.S. Dist. LEXIS 49975 (S.D. Fla. Mar. 21, 2022) ................................... passim

*Spokeo, Inc. v. Robins*,

    578 U.S. 330 (2016) ................................................................................................. 9

*Toback v. GNC Holdings, Inc.*,

    2013 U.S. Dist. LEXIS 131135 (S.D. Fla. Sept. 13, 2013) ...................................... 9

*Vega v. T-Mobile USA, Inc.*,

    564 F.3d 1256 (11th Cir. 2009) .................................................................. 21, 22, 23

*Weiss v Gen. Motors LLC*,

    418 F. Supp. 1173 (S.D. Fl. 2019) ......................................................................... 10

**Rules**

Fed. R. Civ. P. 23(b)(2) ................................................................................................. 25

**Regulations**

49 CFR § 571.202a. .................................................................................................................... 3

72 Fed. Reg. 25,484 .................................................................................................................... 3

Defendant FCA US LLC ("FCA US") hereby opposes the Motion for Class Certification filed by Plaintiffs Jason Nuwer, Kevin Van Allen, and Amarillis Ginoris.

# I.   <u>INTRODUCTION</u>

Plaintiffs allege that 16 million Active Head Restraints ("AHRs") installed in eleven models of FCA US-produced vehicles are defective. An AHR is a headrest that clicks forward approximately two inches in a rear-impact collision to reduce whiplash injuries by providing better support for the head and neck than if the headrest remained in the more comfortable undeployed position. Plaintiffs allege the AHRs are defectively designed because FCA US used an insufficiently robust plastic in the AHR system. Pls.' Motion, at 1. They claim that every AHR is defective because its internal plastics will eventually crack and cause inadvertent deployment. *Id.* An image of an AHR is below:

     

STOWED POSITION-      DEPLOYED POSITION-
AHR Assembly          AHR Assembly

This case is the third putative class action regarding the AHRs in FCA US vehicles, but it is the first to allege that the plastic in the AHR is defective in its unaltered, uncontaminated state. Plaintiffs' counsel concocted this new "design defect" theory in an attempt to certify a class.

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████



Class certification is not appropriate for several reasons. First, the named plaintiffs lack Article III standing to assert many of their proposed claims. The proposed nationwide class encompasses eleven vehicles with model years from 2010-2018, but the named plaintiffs bought or leased only two of those vehicles in two states: the 2013 Dodge Journey (Florida) and the 2018 Jeep Grand Cherokee (New York and Florida). Plaintiffs lack standing to assert claims on behalf of people who purchased different vehicles than the one they did.  They also lack standing to assert claims under the laws of a state that does not apply to their claims.





,

Nor can Plaintiffs meet the typicality, adequacy, or superiority requirements of Rule 23. For these and other reasons, the Court should deny Plaintiffs' motion.

## II.   **FACTS**









6

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
█████████████████████████

### H.  The Proposed Class Representatives and Their Claims.

There are three named plaintiffs in this litigation, each of whom serves as a class representative.[1] Plaintiffs' definition of Class Vehicles encompasses the following vehicles:

1. 2010-2018 Dodge Journey;
2. 2010-2011 Dodge Nitro;
3. 2010-2012 Jeep Liberty
4. 2010-2017 Jeep Patriot/Compass
5. 2010-2012 Dodge Caliber;
6. 2010-2018 Dodge Caravan;
7. 2011-2018 Dodge Ram C/V
8. 2011-2018 Dodge Durango;
9. 2011-2018 Jeep Grand Cherokee;
10. 2010-2014 Chrysler Sebring/Avenger;
11. 2011-2018 Chrysler Town & Country.

ECF No. 10, Amend. Compl., ¶16 ("Subject Vehicles"). Plaintiffs have owned or leased exactly two of the 72 makes/model years: the 2013 Dodge Journey and the 2018 Jeep Grand Cherokee. Plaintiffs assert unjust enrichment claims under the laws of their states (New York and Florida),[2] assert claims under the consumer protection laws of their states, seek to represent a nationwide class on an unjust enrichment claim—which  is not tethered to any particular state's laws—and seek to represent a nationwide class on a Magnuson-Moss Warranty Act claim.

### i.  Plaintiff Amarillis Ginoris

███████████████████████████████████████████

---

[1] Plaintiffs Christina Vigoas and Mark Minkowitzs were dismissed from this action by stipulation of the parties on December 27, 2021. ECF No. 74.

[2] **NY:** GBL § 350; **FL**: Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.*

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████
       ██████████████████████████████████
████████████████████████████

**ii.  Plaintiff Jason Nuwer**

       ██████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
████████████████████████
       ██████████████████████████████████
████████████████████████████

**iii.  Plaintiff Van Allen**

       ██████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
██████████████████
       ██████████████████████████████████
██████████████████████████████████

**III.   ARGUMENT**

8

"All else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation." *Brown v. Electrolux Home Prods.*, 817 F. 3d 1225, 1233 (11th Cir. 2016). To overcome this presumption, "the named plaintiffs must have standing and the putative classes must satisfy an implicit ascertainability requirement, the four requirements listed in Rule 23(a), and at least one of the requirements listed in Rule 23(b)." *Ohio State Troopers Ass'n v. Point Blank Enters.*, 481 F. Supp. 3d 1258, 1270 (S.D. Fl. 2020). Here, Plaintiffs seek certification under Rule 23(b), and thus must prove that the proposed classes satisfy the commonality, predominance, typicality, adequacy and superiority requirements. As the Eleventh Circuit has emphasized, Plaintiffs must "affirmatively demonstrate" compliance with Rule 23 "by proving that the requirements are '*in fact*' satisfied, which requires a 'rigorous analysis.'" *Brown*, 817 F. 3d at 1234. "[I]f doubts remain about whether the standard is satisfied, 'the party with the burden of proof loses.'" *Id.* at 1233.

## A. PLAINTIFFS LACK STANDING TO REPRESENT THE PROPOSED CLASS.

Any analysis of class certification begins with the issue of standing. *Ohio State Troopers*, 481 F. Supp. 3d at 1271. Plaintiffs have Article III standing only if they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[S]tanding is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). It is claim-specific, not case-specific. "[A] plaintiff must demonstrate standing for *each claim* he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (emphasis added). Plaintiffs have the burden of proving their standing. *OSI, Inc. v. U.S.*, 285 F.3d 947, 951 (11th Cir. 2002). They fail to meet that burden for two main reasons.

### i. Plaintiffs Cannot Raise Claims For Products They Did Not Purchase or Lease.

"[T]he consensus of authority in the Eleventh Circuit [is] that a named plaintiff in a consumer class action cannot raise claims relating to products that he or she did not purchase." *In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1125-26 (S.D. Fla. 2019); *see also Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1394 (S.D. Fla. 2014) (similar). This rules makes sense. If no named plaintiff bought a particular product, then no class representative suffered an injury "fairly traceable" to that product. *Spokeo*, 578 U.S. at 338. A plaintiff "cannot establish his Article

III standing with respect to any product other than the" one he purchased, and "cannot raise claims relating to those other products which he did not purchase." *Toback v. GNC Holdings, Inc.*, 2013 U.S. Dist. LEXIS 131135, at *14-15 (S.D. Fla. Sept. 13, 2013) (citation omitted).

In *Leon v. Continental AG*, 301 F. Supp. 3d 1203 (S.D. Fla. 2017), purported class representatives lacked standing to bring claims based on vehicles other than the one they had purchased (a Mercedes Benz C Class), even though the other vehicles had "the same defective" component. *Id.* at 1221. The court reasoned that the "[p]laintiffs have Article III standing to bring their claims against [Mercedes], *with the exception of* those claims advanced on behalf of *owners of vehicle models they do not own.*" *Id.* at 1126 (emphases added).

So too here. Plaintiffs Ginoris and Nuwer owned the 2013 Dodge Journey and the 2018 Jeep Grand Cherokee, respectively, so they cannot represent owners/lessees of the other vehicles in the proposed class: the Dodge Nitro, Jeep Liberty, Jeep Patriot/Compass, Dodge Caliber, Dodge Caravan, Dodge Ram C/V, Dodge Durango Chrysler Sebring/Avenger, or Chrysler Town & Country owners. Likewise, Plaintiff Van Allen leased only a 2018 Jeep Grand Cherokee, and so he cannot represent owners or lessees of any other vehicles.

Plaintiffs cannot salvage standing by arguing that the vehicles in the proposed class are "identical." *Weiss v Gen. Motors LLC*, 418 F. Supp. 1173, 1180 (S.D. Fl. 2019). ███

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████

█████████████████████████████████████████████

██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████████

    **ii.**  **Plaintiffs Cannot Assert Claims Under The Laws Of States Other Than Their Own.**

Plaintiffs also lack standing to assert claims based on state laws other than Florida and New York. "[N]amed plaintiffs in class actions have, time and again, been prohibited from asserting claims under a state law other than that which the plaintiff's own claim arises." *Lewis v. Mercedes-Benz United States*, 530 F. Supp. 3d 1183, 1205 (S.D. Fla. Mar. 30, 2021) (quotation marks omitted); *see also In re: Takata*, 2016 WL 1266609 at *4 ("A named plaintiff lacks standing to assert legal claims on behalf of a putative class pursuant to state law under which the named plaintiff's own claims do not arise."). Therefore, Plaintiffs lack standing to pursue their national unjust enrichment claim and national Magnuson-Moss claim.

This Court's decision in *Simmons v. Ford Motor Co.* is instructive. There, as here, plaintiffs in a putative class action sought certification of a "multi-state class for unjust enrichment." *Simmons*, 2022 U.S. Dist. LEXIS 49975, at *26. The *Simmons* court denied certification of the multi-state unjust enrichment claim, reasoning that "while Plaintiffs' Complaint 'lists one generic general unjust enrichment claim, that claim is, in reality, [five] unjust enrichment claims—one for each state [represented]. Such a claim would thus need to be brought on behalf of [five] state subclasses.' … Accordingly, further subclass division by state regarding Plaintiffs' unjust enrichment claims would be required to establish standing." *Id.* (internal citations omitted).

The same reasoning holds here. Plaintiffs' nationwide unjust enrichment claim is really 49 unjust enrichment claims,[3] and Plaintiffs lack standing to bring such claims for states other than Florida and New York. *See, e.g.*, *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1324-25 (S.D. Fla. 2010) (holding "Plaintiffs may only assert a state statutory claim if a named plaintiff resides in that state," assuming the law of the state of residence would apply). This is true of Plaintiffs' national Magnuson-Moss claim, too. Because plaintiffs only assert breach of implied

---

[3] Plaintiffs' nationwide class excludes California.

warranty claims under the laws of Florida and New York, and "lack standing to represent putative class members of states for which there are no breach of implied warranty claims", "Plaintiffs cannot state a nationwide-class claim under the Magnuson-Moss Warranty Act." *Puhalla v. Mercedes-Benz USA, LLC (In re Takata Airbag Prods. Liab. Litig.)*, 462 F. Supp. 3d 1304, 1335 (S.D. Fla. 2020).

### B.  PLAINTIFFS HAVE NOT MET THE STATUTORY REQUIREMENTS TO CERTIFY A MAGNUSON-MOSS CLASS

The Magnsuon-Moss Warranty Act (the "MMWA") has strict prerequisites for class certification. Here, Plaintiffs fail to meet their statutory burden, and therefore no Magnuson-Moss class can be certified. Section 2310(d)(3)(C) of the MMWA prohibits class actions "if the number of named plaintiffs is less than one hundred." "A trial court may certify a Magnuson-Moss class action only if there are, at the time of certification, at least 100 named plaintiffs left in the case." *Carlson v. General Motors Corp.*, 883 F.2d 287, 289 n. 3 (4th Cir. 1989); *see also, e.g., Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 574 n. 5 (9th Cir. 2004); *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 246 (2d Cir. 1986); *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1067 n. 13 (5th Cir. 1984); *Da Air Taxi LLC v. Diamond Aircraft Indus.*, No. 09-60157-CIV-UNGARO, 2009 U.S. Dist. LEXIS 139017, at *7 (S.D. Fla. Nov. 4, 2009). Here, there are only three named plaintiffs, so a Magnuson-Moss class cannot be certified.

Plaintiffs might respond by stating that the Court should read the Class Action Fairness Act ("CAFA") as overriding the MMWA's 100-named-plaintiff requirement. However, the Court should decline to do so. The Ninth Circuit Court of Appeals is the only circuit court to directly address this issue, holding that "CAFA does not demonstrate any intent by Congress to repeal or alter parts of the MMWA's jurisdictional requirements." *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1035 (9th Cir. 2020). And, while the Eleventh Circuit has not addressed the issue, this Court has, holding that CAFA does not supplant the MMWA's 100-named-plaintiff requirement. *Lewis v. Mercedes-Benz United States*, 530 F. Supp. 3d 1183 (S.D. Fla. 2021);[4] *see also, Jackson v. Anheuser-Busch Inbev SA/NV, LLC*, No. 20-cv-23392, 2021 U.S. Dist. LEXIS 155556, at *50 (S.D. Fla. Aug. 18, 2021).

### C.  THE PUTATIVE CLASS IS NOT ASCERTAINABLE

---

[4] *Lewis* is particularly on point as it addresses an AHR installed in Mercedes vehicles and was filed by the same Plaintiffs' counsel as this case.

The proposed class is made up predominantly of putative members who have never experienced the alleged defective condition, an AHR deployment, including all of the named plaintiffs. Only a small minority of the putative class members have actually had their AHRs inadvertently deploy. As such, Plaintiffs' proposed class is unascertainable, and class certification must be denied. *See, e.g.*, *Simmons*, 2022 U.S. Dist. LEXIS 49975, at *33 (denying class certification when Plaintiffs' putative class contained a majority of vehicle owners who never experienced the defect condition).

As an initial matter, "courts have been particularly reluctant" to certify "classes that include both class members whose product has manifested the deficiency and those whose product has performed satisfactorily." *Harris v. Nortek Glob. HVAC LLC*, No. 14-21884, 2016 U.S. Dist. LEXIS 18795, at *5 (S.D. Fla. Jan. 29, 2016). █████████████████████████████
█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████
███████████████████████████

A " class should not be certified if it is apparent that it contains *a great many* persons who have suffered no injury at the hands of the defendant." *Cordoba v. DirecTV, LLC*, 942 F.3d 1259, 1276 (11th Cir. 2019). And, in *Ohio State Troopers Assn' v. Point Blank Enters.*—which involved purportedly defective bulletproof vests—this Court explained that class certification was improper when a proposed class "[was] overbroad because it included *all* individuals who purchased … vests, *including vests that are not defective*." 347 F. Supp. 3d at 1232 n. 12 (emphasis added). Many other decisions agree. *See, e.g.*, *Harris v. Nortek Global HVAC LLC*, Case No. 14-civ-21884, 2016 U.S. Dist. LEXIS 18795 at *21 (S.D. Fl. Jan. 29, 2016) (denying class certification where proposed class definition included "class members who have experienced the deficiency and those who have not"); *Breakstone v. Caterpillar, Inc.*, No. 09-23324, 2010 U.S. Dist. LEXIS 142220, at *16 (S.D. Fla. May 26, 2010) (denying class certification because "it is inappropriate to certify a class containing both individuals who have manifested a deficiency and those whose product has performed satisfactorily") (internal citation and quotation marks omitted); *see also*

13

*Melton v. Century Arms, Inc.*, No. 16-21008, 2018 U.S. Dist. LEXIS 203026, at *16 (S.D. Fla. Nov. 28, 2018) (recommending denial of class certification where "the record evidence fail[ed] to support Plaintiffs' contention that the Class Weapons all exhibit the Class Defect"); *Kia Motors Am. Corp. v. Butler,* 985 So. 2d 1133, 1139 (Fla. 3d DCA 2008) (reversing class certification in FDUTPA and breach of warranty action where "the class representative . . . [sought] compensation not only for class members whose brakes have manifested a deficiency, but also for those whose brakes have performed satisfactorily," explaining that "[i]n certifying the class, the trial court deviated from the majority of jurisdictions, which consistently have denied class recovery on the type of theory the class representative presses in this case").



This Court should follow *Simmons* and *Ohio State Troopers* and deny certification on the basis that Plaintiffs have failed to establish that their proposed classes are clearly ascertainable.

### D. INDIVIDUAL ISSUES PREDOMINATE ON ALL OF PLAINTIFFS' CLAIMS.

Under Rule 23(a), Plaintiffs must prove that there are questions of law or fact common to the class. Plaintiffs have not identified even one such question of law or fact. But "[e]ven if Rule 23(a)'s commonality requirement may be satisfied . . . the predominance criterion [of Rule 23(b)(3)] is far more demanding. *Amchem Prods. v. Windsor*, 521 U.S. 591, 623-24 (1997). Indeed, "[f]ailure to satisfy the predominance requirement, especially in automotive defect cases, has often been the reason courts have denied class certification." *Martin v. Ford Motor Co.*, 292

F.R.D. 252, 271 (E.D. Pa. 2013). As demonstrated below, Plaintiffs cannot meet the more demanding predominance requirement of Rule 23(b)(3).

### i.  Plaintiffs Have Not Established That State Laws Are Uniform.

Plaintiffs seeking to represent multi-state classes must show that the applicable laws are sufficiently similar to allow for classwide resolution. *Sacred Heart Health Sys. v. Humana Military Healthcare Servs.*, 601 F.3d 1159, 1180 (11th Cir. 2010). But Plaintiffs' approach here—"merely recit[ing] the elements of [Plaintiffs'] claims … without an analysis of how those elements are interpreted or analyzed by the various states"—has been "rejected by courts as overstating the similarities of various state laws." *Andersen v. Atl. Recording Corp.*, 2010 U.S. Dist. LEXIS 44168, at \*24 (D. Or. May 4, 2010). And as highlighted below, there are significant differences in the applicable state laws for which Plaintiffs make no attempt to account.

### ii.  Whether the Subject Vehicles Are "Defective" Is Not a Common Issue.

Underlying all of Plaintiffs' claims in this case is the question of "whether the AHRs in certain Chrysler model vehicles were defective … ." Pls.' Motion, at 19. Plaintiffs claim that the AHR systems are all defective because the plastic sleds used in all AHRs are insufficiently robust. But, there is no evidence to support this conclusion.



Plaintiffs also ignore that an increasing number of putative class vehicles went their whole service life without an inadvertent AHR deployment. Per FCA US's design specifications, the AHR was designed to have a service life of "10 year and/or 150,000 miles." Ex. Z, FCA US AHR Performance Standard PF 11-666. Based on this standard, every vehicle built before June 5, 2012, has reached the end of its AHR's service life. Each owner of one these vehicles who did not experience an inadvertent AHR deployment lacks a viable claim against FCA US, as the owners did not incur personal injury or property damage. *See Ohio State Troopers*, 481 F. Supp. 3d at 1275. The same is true of individuals whose vehicles were built after June 5, 2012, but have reached 150,000 miles without an inadvertent AHR deployment. *Id.* Thus, individual inquiries will need to be made into each class member's vehicle's build date, the vehicle's milage, and whether an AHR deployed to determine whether the class member obtained the benefit of the bargain.

### iii. <u>Whether FCA US Had Knowledge is Not a Common Issue.</u>

Plaintiffs assert that FCA's knowledge of the alleged defect in the AHRs is susceptible to common proof. Plaintiffs need to prove that FCA US had knowledge of an AHR defect to prove their FDUTPA claims and to prove their false advertising claim under New York law. The role

FCA US's purported knowledge plays in each cause of action differs in Florida and New York.



Given these and other individual issues, the question of FCA US's knowledge is not common. *See, e.g., In re MyFord Touch Consumer Litig.*, 2018 U.S. Dist. LEXIS 129261, at *10 (N.D. Cal. Aug. 1, 2018); *In re Baycol Prods. Litig.*, 218 F.R.D. 197, 208 (D. Minn. 2003); *In re*

*Vioxx Products Liab, Litig.*, 239 F.R.D. 450, 461 (E.D. La. 2006).

Nor is it a common question whether FCA US had "exclusive" knowledge of material facts not known to class members. Plaintiffs' proposed class includes people who may well have known about the alleged defect before they purchased their Subject Vehicle. An individual inquiry would be required to determine which class members were aware of the potential defect at the time of purchase, and such people cannot be included in the class. *See e.g., Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012).

Plaintiff Nuwer is a perfect example. On December 21, 2018 his local NBC affiliate published an article describing the *Alger* case and Mr. Alger's allegations that a latch in the AHR "can wear out and shatter spontaneously, propelling the spring-loaded headrest into the driver's head." Ex. BB, NBC News Report re AHRs. This article was accompanied by a televised broadcast segment. Mr. Nuwer testified that the description of the alleged AHR defect contained in the NBC news article and segment is "similar" to what he is alleging is the defect that FCA US concealed from him and other putative class members. Ex. T, Nuwer Dep., 58:21-59:16. Other putative class members might have seen this December 21, 2018, news report, might have seen a different news report at a different time, might have learned of the alleged defect though some other medium, or might not have heard anything about the alleged defect. None of those individual issues are common to the entire class, and they predominate over any potential common issues.

### iv. Whether The AHR Poses a Safety Risk is Not Common.

Whether the alleged defect poses an unreasonable safety risk is not a common question. FCA US denies that the alleged defect poses an unreasonable safety risk, but to the extent it is found to implicate safety concerns, "the rational calculation of risk requires multiplying the magnitude of a threatened loss by the probability of its occurrence." *Arrendondo v. Neven*, 763 F.3d 1122, 1131 (9th Cir. 2019)) (citing *United States v. Carroll Towing Co.*, 159 F.2d 169, 173 (2d Cir. 1947)). ███████████████████████████████████████

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
█████████████████

Further, Plaintiffs have presented no evidence to support a conclusion that the alleged defect poses an unreasonable safety risk either with respect to the potential for distraction or for

personal injury. 

**v.  Materiality, Deception, And Actual Injury Are Individual Issues**

---

[5] HIC is a standard metric based on decades of research that is commonly used by the federal government to assess the potential for head injuries. Ex. W, 2/7/2019 Jonik Dep. at 98:21-24. A HIC score of 1000 represents the "safe" limit of human tolerance.

19

**<u>Under New York Law</u>**.

To prevail in a cause of action under N.Y. General Business Law § 350, plaintiffs must allege that a defendant's advertisement "(1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in injury." *Koch v. Greenberg*, 14 F. Supp. 3d 247, 261 (S.D.N.Y. 2014). Furthermore, the false advertising plaintiff "must further demonstrate proof of actual reliance." *Merck Eprova AG v. BrookStone Pharm.*, LLC, 920 F. Supp. 2d 404, 425 (S.D.N.Y. 2013). "Typically [this] means he must point to a specific advertisement or public pronouncement upon which the consumer relied. *Sabatano v. Iovate Health Scis. U.S.A. Inc., No. 19 CV 8924 (VB)*, 2020 U.S. Dist. LEXIS 109265, at *6-7 (S.D.N.Y. June 22, 2020).

**Materiality.** Materiality depends upon the probability that oil contamination occurred and will cause an inadvertent deployment, and that probability varies by model, model year, and date of production. As an initial matter, courts have recognized that all products may fail, and a low failure rate, alone, is not material. *See Carlson v. Gillette Co.*, Civil Action No. 14-14201-FDS, 2015 U.S. Dist. LEXIS 144559, at *21 (D. Mass. Oct. 23, 2015) ("The fact that some small percentage of the products may fail, without more, is not a fact that is likely to influence an objectively reasonable customer; all products fail to at least some small degree."). This is especially true in the automotive context. Vehicles are "complex instrumentalities," and defects or other problems that require maintenance or replacement of parts can be expected to arise. *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 789 (N.J. 2005). Consistent with this fact, courts have held that incidence rates at or below 1% are not material, as a matter of law. *Coba v. Ford Motor Co*., 932 F.3d 114, 126 (3rd Cir. 2019) ( holding "no reasonable factfinder could conclude" that a 1% or less incidence rate based on replacement parts data "would be material to a reasonable consumer prospectively deciding … whether to purchase a … truck"). ████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ Therefore, the issue of materiality is not common.

**Deception.** As discussed above, there is ample reason to believe that a significant number of class members were exposed to information, including televised news segments, concerning

AHR deployment and purchased their vehicles anyway. *See e.g.,* Nuwer Dep., 58:21-59:16. Where, as here, the "circumstances" of class members vary with respect to whether they "possessed or could reasonably have obtained the relevant information they now claim the [defendant] failed to provide," "whether a reasonable consumer in plaintiffs' circumstances might have been misled" is not a common question. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 27 (N.Y. 1995).

**Actual injury.** Plaintiffs have proposed no class-wide method of proving an "actual injury" under GBL § 350. Where, as here, the alleged injury arises from nondisclosure of a defect claimed to make a product "prone" to failure, "actual injury" can be established through manifestation of the defect (which cannot be proven on a class-wide basis), but it *cannot* be established through claims of economic injuries attributable to the product's failure to meet customer expectations. *See, e.g., Marshall v. Hyundai Motor Am.*, 334 F.R.D. 36, 57 (S.D.N.Y. 2019); *Frank v. DaimlerChrysler Corp.*, 292 A.D.2d 118 (App. Div. 2002).

In *Frank*, the court rejected claims brought on behalf of a putative class of vehicle purchasers who claimed their vehicles' seatbacks suffered from a defect that rendered them unsafe in a collision. 292 A.D.2d at 120. They did not claim their vehicles suffered any actual malfunction caused by the defect, but—like Plaintiffs here—alleged they "'suffered economic loss' in that the Class Vehicles and seats did not meet reasonable consumer expectations," and—like here—sought "compensatory damages 'measured by the cost of correcting the Defect.'" *Id.* The court affirmed the lower court's dismissal of the plaintiffs' claims because they failed to plead any actual injury:

> [I]t would be manifestly unfair to require a manufacturer to become, in essence, an indemnifier for a loss that may never occur. Plaintiffs' argument, basically, is that as an accident becomes foreseeably possible … the manufacturer must retrofit the product or otherwise make the consumer whole. However, under such a schematic, as soon as it can be demonstrated, or alleged, that a better design exists, a suit can be brought to force the manufacturer to upgrade the product or pay an amount to every purchaser equal to the alteration cost. Such "no injury" or "peace of mind" actions … would increase the cost of manufacturing, and therefore the price of everyday goods to compensate those consumers who claim to have a better design, or a fear certain products might fail.

*Frank*, 292 A.D.2d at 127; *see also In re GM LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372,

429-431 (S.D.N.Y. 2017).[6] Furthermore, this Court's analysis of *Frank* at the 12(b)(6) stage of litigation should not govern at the class certification stage. As this Court held, "Plaintiffs will be required to prove actual economic injury to recover under New York Law." *Nuwer v. FCA US Ltd. Liab. Co.*, 552 F. Supp. 3d 1344, 1358 (S.D. Fla. 2021). But, this will require individual inquiry. Because Plaintiffs' NY GBL § 350 claim based on alleged concealment of a defect that makes the vehicles "susceptible" to AHR deployment requires individualized proof of manifestation—or some injury other than alleged economic injury attributable to the vehicles' failure to meet Plaintiffs' expectations—this claim cannot be certified for class-wide treatment.

### vi. <u>Materiality, Actual Deception, And The Likelihood Of Deception Are Individual Issues Under Florida Law.</u>

"[A] claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Kia Motors Am. Corp. v. Butler*, 985 So. 2d 1133, 1140 (Dist. Ct. App. 2008). A deceptive practice under the FDUTPA is a "material representation or omission that is likely to mislead the consumers acting reasonably *under the circumstances*." *Burrows v. Purchasing Power, LLC*, 2012 U.S. Dist. LEXIS 186556, at *18 (S.D. Fla. Oct. 18, 2012) (emphasis added). Therefore, as in New York, where the "circumstances" of class members vary with respect to whether they possessed or reasonably could have obtained the relevant information, the question whether a reasonable consumer in plaintiffs' circumstances was likely to be misled is not common. *See, e.g., Kia Motors,* 985 So. 2d at 1140; *Pop's Pancakes, Inc. v. NuCO2, Inc.,* 251 F.R.D. 677, 685-86 (S.D. Fla. 2008); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, 2012 U.S. Dist. LEXIS 13887, at *110-11 (D.N.J Feb. 6, 2012); *Egwuatu v. South Lubes, Inc.*, 976 So. 2d 50, 53-54 (Fla. Dist. Ct. App. 2008). In fact, "[t]he mere possibility some customers in certain situations and in possession of certain information could have reasonably understood [the potential for AHR deployment] undercuts Plaintiff's theory from a class-certification perspective." *Deere Constr. V. Cemex Constr. Materials Florida, LLC*, 2016 U.S. Dist. LEXIS 193561, at *12 (S.D. Fla. Dec. 1, 2016). Here, numerous class members possessed

---

[6] New York state courts have distinguished "tendency to fail" cases like the instant case, which are governed by *Frank*, from breach of contract cases involving products that do not meet specifications and do not rely on a risk of failure to establish their allegations. *Ignition Switch*, 257 F. Supp. 3d at 430. Also distinguishable for the same reason are cases based on affirmative misrepresentations about products. *See, e.g., Ebin v. Kangadis Food Inc*., 297 F.R.D. 561 (S.D.N.Y. 2014).

information relating to AHR deployment that was contained in both a televised news segment and published news article. Therefore, there is clear proof that all Florida class members are not similarly situated, and an FDUTPA class cannot be certified.

Finally, materiality is not a common issue in Florida for the same reasons discussed above: the 10-year failure rate varies widely based on vehicle model and model year.

### vii. Individual Issues Predominate On Plaintiffs' Unjust Enrichment Claims.

Plaintiffs seek class certification of their unjust enrichment claim without acknowledging *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009), which held that "common questions will rarely, if ever, predominate an unjust enrichment claim, the resolution of which turns on individualized facts."

Plaintiffs' analysis as to how the various states interpret the elements of this claim is contained in Exhibit DDD to their Motion. As an initial matter, this Court should decline to consider this Exhibit. Plaintiffs were granted leave to file excess pages (Dkt. 83), and their Exhibit DDD—including its citation to case law—is an impermissible end-run around this Court's page limits. *See, e.g.*, *In re FCA US LLC Monostable Elec. Gearshift Litig.*, No. 16-MDL-02744, Dkt. 325 (E.D. Mich. March 7, 2019) ("[T]he so-called 'appendices' here are nothing more than a 60-page running footnote to the plaintiffs' brief, which they have employed as an artifice grossly to inflate the pages consumed by their briefing, far beyond the allowance for excess pages that the Court granted with regard to the motion for class certification.").

Moreover, Plaintiffs' assertion that "common issues clearly predominate over individual ones" ignores that the individualized inquiries go beyond the defendant's conduct. *Vega*, 564 F.3d at 1274 ("before it can grant relief on this equitable claim, a court must examine *the particular circumstances of an individual case* and assure itself that, without a remedy, inequity would result or persist.").

While most states require that there be a benefit to the defendant, in some the benefit can be conferred through indirect contact with the manufacturer through a retailer. But Plaintiffs have made no attempt to address the individual inquiry required to determine whether class members bought their vehicle new or used, whether FCA US reaped a benefit from the transaction, and if so, how the amount of that benefit can be determined on a class-wide basis from common evidence. *See, e.g.*, *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, 2010 U.S. Dist. LEXIS 68241, at

*50-55, *70-75, *95-99, *130-36, *153-55, *232-33 (rejecting unjust enrichment claim under California, Florida, Illinois, New Jersey, New York, and Pennsylvania law, absent evidence of relationship between the automobile dealer and automobile manufacturer); *Daigle v. Ford Motor Co.*, 2012 U.S. Dist. LEXIS 106172, at *13 (D. Minn. July 31, 2012) (applying Florida law) (purchase of a used vehicle confers no benefit on automobile manufacturer).

Further, Plaintiffs must also show that the benefit conferred on the defendant came at the plaintiffs' expense, which requires consideration of what each class member paid, and what their specific vehicle was worth. *See, e.g.*, *In re Tropicana Orange Juice Mktg. & Sales Pracs. Litig.*, 2018 U.S. Dist. LEXIS 9797, at *14-15 (D.N.J. Jan. 22, 2018). Class members who did not pay more than their vehicles were worth have lost nothing. *See id.*; *see also In re Ford Motor Co. E-350*, 2010 U.S. Dist. LEXIS 68241, at *232-33.

Next, Plaintiffs must establish that it would be unjust under the circumstances for FCA US to retain any benefit conferred by a class member. This necessarily depends on individual factors, including the vehicle purchased, whether the consumer knew or reasonably could have known the undisclosed material facts, whether they would have purchased their vehicles knowing those facts, whether the class members experienced an AHR deployment, and so on.

The individualized nature of these inquiries defeats certification. *See, e.g.*, *Vega*, 564 F.3d at 1274-75 ("[W]hether or not a given commission charge back was 'unjust' will depend on what each employee was told and understood about the commission structure and when and how commissions were 'earned.' Those class members who concede awareness . . . cannot claim injustice[.]"); *accord, In re Ford Motor Co. E-350 Van Prod. Liab. Litig.*, 2012 U.S. Dist. LEXIS 13887 at *107 (the "court would need to conduct separate inquiries into the equities of each class member's consumer experience to resolve these claims"); *Rollins Inc., v. Butland*, 951 So. 2d 860 (Fla. 2d DCA 2006) (denying certification of unjust enrichment claim because individual issues predominate); *Ohio State Troopers Ass'n, Inc.*, 481 F. Supp. 3d at 1276 (refusing certification where proposed class included members whose products never manifested any defect).

### viii.    Statutes of Limitations Raise More Individual Issues.

"[A]ffirmative defenses are still relevant to the question of predominance" and "can defeat predominance in some circumstances." *Brown v. Electrolux Home Prods.*, 817 F.3d 1225, 1241 (11th Cir. 2016). Here, the proposed classes include vehicles beginning with model year 2010, and

24

the statutes of limitations for the various claims in the various states range from 4 to 6 years.[7] This class action lawsuit was not filed until February 27, 2020. Thus, the claims of a significant number of class members are likely time-barred—unless the respective statutes of limitations were tolled by the discovery rule, the fraudulent concealment doctrine, or equitable estoppel. But not all the states recognize these doctrines, and even where recognized, the tests differ by state. And application of these tolling doctrines requires individual inquiry into *what* each class member knew or should have known about the facts giving rise to their claim, *when* each class member knew or should have known them, and *what* actions were taken by FCA US vis-a vis each class member.[8] This myriad of individual issues will repeat itself again and again for each class member, weighing heavily against a finding of predominance. *See, e.g., Jim Moore Ins. Agency, Inc. v. State Farm Mut. Auto. Ins. Co.*, 2003 U.S. Dist. LEXIS 25550 at *39-40 (S.D. Fla. May 6, 2003).

### ix.  Plaintiffs Have No Classwide Measure Of Damages.

### a)  Repair Cost Is Not A Proper Measure Of Damages For Plaintiffs' Consumer Fraud Claims Based On Omission.

"[U]nder Rule 23(b)(3), a plaintiff must also 'establish that damages are susceptible of measurement across the entire class' …." *Ohio State Troopers Ass'n*, 481 F. Supp. 3d at 1271 (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013)). "[A]t the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case …." *Comcast*, 569 U.S. at 35 (internal citation omitted).

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

---

[7] **Fla.**-FDUTPA and unjust enrichment: 4 years (§§ 95.11(3)(f) and k, Fla. Stat); **N.Y.**-GBL § 349: 3 years (N.Y. C.P.L.R. 214); unjust enrichment: 6 years (N.Y. C.P.L.R. 213).

[8] *See, e.g.*, **Fraudulent Concealment**: *Sloan v. Gen. Motors LLC*, 2020 U.S. Dist. LEXIS 71982 at *58 (N.D. Cal. Apr. 23, 2020); *Mahoney v. Beacon City Sch. Dist.*, 988 F. Supp. 395, 400 (S.D.N.Y. 1997); **Equitable estoppel**: *Licul v. Volkswagen Grp. of Am., Inc*., 2013 U.S. Dist. LEXIS 171627 at *16 (S.D. Fla. Dec. 5, 2013).



**Florida**. FDUTPA does not cover repair costs. *See Ohio State Troopers Ass'n*, 481 F. Supp. 3d at 1284; *see also Simmons*, 2022 U.S. Dist. LEXIS 49975, at *36. Plaintiffs might claim that Stockton is only using repair costs as a *measure* for actual point-of-sale damages, but in *Ohio State Troopers* this Court held that "FDUTPA damages are measured according to the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered . . ." *Id.* at 1283 (citations omitted). "Curiously," as in *Ohio State Troopers*, "Plaintiffs' damages expert … did not measure the market value," either of the vehicle as promised or the vehicle as delivered. *Id.* at 1284.



**New York.** As discussed above, controlling New York authority precludes a cost of repair award where an unmanifested defect is alleged to create a tendency to fail. *Frank,* 292 A.D.2d at 120. In any event, repair costs are not a proxy for properly-calculated benefit of the bargain damages in cases where such damages are allowed. *Maciel v. BMW of N. Am. LLC*, 2021 U.S. Dist. LEXIS 34311, at *25-26 (E.D.N.Y. Feb. 23, 2021). Plaintiffs cite no decisions allowing repair cost recovery in New York under any theory, including benefit of the bargain.

      **b) Plaintiffs Have Proposed No Measure Of Restitution For Unjust Enrichment, Let Alone A Classwide Measure.**

Plaintiffs do not explicitly argue that their cost of repair damages model suffices for both

their statutory claims and their unjust enrichment claims, but they do not propose any additional damages model. The remedy for unjust enrichment is restitution, which is intended to restore the parties to their position before the transaction, not to give either party the post-transaction benefit of their bargain. *See generally* Restatement (Third) Restitution and Unjust Enrichment, § 1. Plaintiffs cite no authority from any state that permits recovery of benefit of the bargain damages for unjust enrichment.

### E. PLAINTIFFS' REQUEST FOR A 23(b)(2) INJUNCTIVE RELIEF CLASS SHOULD BE DENIED.

For their Rule (b)(2) class, Plaintiffs seeks injunctive relief in the form of an order "requir[ing] Chrysler to notify consumers of the defect and repair or replace its defective AHR systems." Pls.' Motion, at 26. The Court should deny this request.

The FDUTPA provides for both injunctive or declaratory relief and monetary damages, which Plaintiffs seek. Fla. Stat. § 501.211(1)-(2). Here, Plaintiffs have claimed putative class members were harmed when they paid for allegedly defective automobiles, and have pursued monetary damages as the predominant form of relief. *See, e.g.*, *Harris v. Nortek Glob. HVAC LLC*, No. 14-CIV-21884-BLOOM/Valle, 2016 U.S. Dist. LEXIS 18795 (S.D. Fla. Jan. 28, 2016) (finding monetary relief sought under FDUTPA is not "merely incidental" to injunctive relief when a plaintiff aims "to recover damages based upon the amount each individual class member paid for a defective product"). Thus, Plaintiffs' request for an order forcing FCA US to notify consumers of a defect would simply "lay the ground work for these monetary damages." *Ohio State Troopers*, 481 F. Supp. 3d at 1281 (denying certification of an injunctive relief class). This, of course, is improper. "[A]n action seeking a declaration concerning the defendant's conduct that appears designed simply to lay the basis for a damage award rather than injunctive relief would not qualify under Rule 23(b)(2)." *AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*, 938 F.3d 1170, 1179 (11th Cir. 2019).

Moreover, certifying a class for the type of injunctive relief Plaintiffs seek would require FCA US to provide a remedy that some class members may already have (such as class members whose vehicles were built with or had replaced AHRs manufactured after the clean point), and would "undo the careful interplay between Rules 23(b)(2) and (b)(3)." *McManus v. Fleetwood Enters.*, 320 F.3d 545, 553-54 (5th Cir. 2003). This is in part because "defendants would potentially be forced to pay what is effectively money damages, without the benefit of requiring

plaintiffs to meet the rigorous Rule 23(b)(3) requirements." *Id.* at 554.

Besides, a 23(b)(2) class must satisfy the requirements of Rule 23(a), including commonality and typicality. *See* Fed. R. Civ. P. 23(b)(2). As explained above, Plaintiffs have not satisfied any of those requirements.

### F. THE EASTERN DISTRICT OF CALIFORNIA'S *ALGER* DECISION IS DISTINGUISHABLE

Plaintiffs spend a considerable amount of time discussing the class certification decision in *Alger v. FCA US LLC*, Case No. 18-cv-00360, pending in the United States District Court for the Eastern District of California. However, the *Alger* decision is distinguishable. As an initial matter, the court held no hearing before issuing the certification order; it simply ordered Plaintiff Shawn Alger's counsel to draft an opinion granting class certification, and then entered that draft as a final order after making only minor revisions. *See Alger* Dkt. 74 ("Plaintiff's counsel is directed to file for the Court's review, a comprehensive proposed order as to the Motion to Certify Class 54 that is amenable to being filed on the public docket."). Beyond its procedural irregularities, the decision is not helpful in this case because it is based on Ninth Circuit and California law. For example, Plaintiffs rely on *Alger* to support the proposition that "variations in manifestation are no bar to class certification." *Alger v. FCA US LLC*, 334 F.R.D. 415, 424 (E.D. Cal. 2020). But, this quotation is supported by citation to Ninth Circuit case law, and is contrary to this Court's prior decisions. *See Ohio State Troopers,* 347 F. Supp. 3d at 1232 n. 12; *See also Simmons*, 2022 U.S. Dist. LEXIS 49975, at *33.  Therefore, this Court should decline to follow *Alger* opinion.

## IV.   <u>CONCLUSION</u>

All of these issues should, at the very least, create a significant doubt about whether class certification is proper, and that doubt requires that Plaintiffs' motion for class certification be denied.

Dated:  June 5, 2022                     Respectfully submitted,

                                                        **RUMBERGER, KIRK & CALDWELL**

                                                        By:     */s/ Michael R. Holt*
                                                        Scott M. Sarason
                                                        Florida Bar No. 0394718
                                                        ssarason@rumberger.com

Michael R. Holt
Florida Bar No. 0483450
mholt@rumberger.com
**RUMBERGER, KIRK & CALDWELL**
A Professional Association
Brickell City Tower, Suite 3000
80 S.W. 8th Street
Miami, Florida 33130-3037
Tel. (305) 358-5577
Fax (305) 371-7580

and

Fred J. Fresard
Ian K. Edwards
Admitted *Pro Hac Vice*
**KLEIN THOMAS & LEE**
101 W. Big Beaver Rd., Suite 1400
Troy, MI  48084
(248) 509-9271
Fred.Fresard@kleinthomaslaw.com
Ian.Edwards@kleinthomaslaw.com


*Attorneys for Defendant FCA US LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that, on June 5, 2022, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By:     */s/ Michael R. Holt*