**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 0:20-CV-60432-SINGHAL

JASON NUWER, AMARILLIS GINORIS, and
KEVIN VAN ALLEN, on behalf of themselves and all
others similarly situated,

    Plaintiffs,

v.

FCA US LLC f/k/a CHRYSLER GROUP LLC,
a Delaware limited liability company,

    Defendant.
_____/

**PLAINTIFFS' REPLY IN SUPPORT OF CLASS CERTIFICATION**

## INTRODUCTION

The evidence in this case demonstrates that Chrysler knowingly manufactured and sold vehicles with defective active head restraints ("AHRs") for more than a decade. ███████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

Because the AHR defect was a design defect common to all Class Vehicles, Plaintiffs' claims are particularly amenable to class certification. Indeed, a federal court has already certified a class based on the exact same defect. *See Alger v. FCA US LLC*, 334 F.R.D. 415 (E.D. Cal. Feb. 8, 2020). None of Chrysler's arguments should persuade this Court to hold otherwise.

Most of Chrysler's arguments go to the merits of Plaintiffs' claims.[1] More importantly, these arguments *support* class certification because they raise questions capable of classwide resolution. Chrysler principally contends that it is "uncontroverted" that the defect is a manufacturing defect because it purportedly arose from one equipment manufacturer's temporary and ████████████████████████████████ The nature of the defect is far from "uncontroverted"—the evidence demonstrates the defect was inherent to the design and, unsurprisingly, ████████████████████████████████████████
████ Regardless, Chrysler's argument simply answers a critical common question in this case: is the AHR defect a dangerous design defect? If the answer is "no," as Chrysler incorrectly contends, then Chrysler will prevail at trial. If the answer is "yes," as the evidence shows, the jury will find for Plaintiffs. Either way, the question posed is readily answered "in one stroke" without

---

[1] *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent-but only to the extent-that they are relevant to determining whether the Rule 23 prerequisites . . . are satisfied.").

invoking individual issues.[2]

For these and other reasons, discussed more fully below, Plaintiffs' claims are ideally suited for class certification. The Court should grant Plaintiffs' Motion and certify the class.

## ARGUMENT

### I. PLAINTIFFS HAVE STANDING TO REPRESENT ALL CLASS MEMBERS.

#### A. The AHR Defect Is Materially Identical Across All Models and Model Years.

Chrysler contends that Plaintiffs have standing to pursue claims only on behalf of class members who own or lease the same model and model-year vehicles as Plaintiffs. *See* Resp. at 9–11. Chrysler relies almost exclusively on district court opinions issued before *Fox v. Ritz-Carlton Hotel Co., LLC*, 977 F.3d 1039 (11th Cir. 2020). *Fox* governs here.

In *Fox*, the plaintiff dined at three restaurants at a Ritz-Carlton hotel that engaged in billing practices that allegedly violated FDUTPA and other Florida statutes. *See* 977 F.3d at 1043–44. He sought to represent consumers who had dined at forty-nine other Ritz-Carlton restaurants engaging in the same practices because he "had the same interest and was injured the same way as the other class members[.]" *Id.* at 1043–44, 1046. The court agreed, concluding that "[c]lass representative standing d[id] not necessarily require that the class representative suffer injury at the same place and on the same day as the class members." *Id.* at 1047.

Plaintiffs here suffered the same injury and have the same interest as all putative class members, as the AHR defect in all Class Vehicles is materially identical. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Simmons v. Ford Motor Co.* does not weigh against certification. There, the plaintiffs alleged that Ford's design of several of its vehicles "did not call for full sealing" where the hem along the edge of the hood closed, causing premature corrosion and other issues. *See* 2022 WL 845127, at *1, *3 (S.D. Fla. Mar. 21, 2022). Like Chrysler, Ford argued that the plaintiffs lacked standing to represent class members with model-year Ford vehicles different from their own. *Id.*

---

[2] *Walmart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) ("That common contention, moreover, must be . . . capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

2

at *7. The *Simmons* court observed that there is no "bright line rule" as to "whether a plaintiff who owns one model year of a vehicle has standing to represent another who owns a *different* model year of that *same* vehicle in a class action[.]" *Id.* Instead, "standing turns on a fact-intensive inquiry regarding whether the different models or model years were identical." *Id.* (cleaned up).

That "fact intensive inquiry" dictated a different result in *Simmons* than it does here. In *Simmons*, the plaintiffs lacked standing to represent class members with different models because the various models had different corrosion protection systems. *See id.* at *8. As a result, the alleged defect was not "materially identical from product to product." *See id.* Here, the opposite is true, so deviation from *Simmons* is warranted. *See, e.g.*, *In re Takata Airbag Prod. Liab. Litig.*, 2022 WL 2297264, at *2 (S.D. Fla. June 24, 2022) (plaintiffs had standing where they "sought to represent purchasers of different models and model years" and "allege[d] the same interest and same injury as the class members"); *Weiss v. Gen. Motors*, 418 F. Supp. 3d 1173, 1180 (S.D. Fla. 2019) (allegations that different model-year vehicles exhibited same defect conferred standing); *Heuer v. Nissan N. Am., Inc.*, 2017 WL 3475063, at *5 (S.D. Fla. Aug. 11, 2017) (same).

Finally, as explained more fully below, Chrysler's claim that the AHR defect was a manufacturing defect lacks evidentiary support. *See* Section IV.A., *infra*. The record is clear that the AHR defect was a design defect that caused all class members the same economic harm.

**B. Plaintiffs Have Standing to Represent Class Members from Other States.**

Chrysler contends that Plaintiffs lack standing to pursue unjust enrichment and MMWA claims on behalf of class members who do not reside in Florida or New York. *See* Resp. at 11–12. In support, Chrysler relies primarily on *Lewis* and *Simmons*, where the same court concluded that the plaintiffs did "not have standing to assert [common law] claim[s] under any state's law but their own because they did not suffer any injuries in fact traceable to alleged violations of laws in other states." *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1205 (S.D. Fla. 2021); *see Simmons*, 2022 WL 845127, at *8–9 (relying on *Lewis*).

The court in *Lewis* (and by incorporation, *Simmons*) relied on *Prado-Steiman v. Bush*, 221 F.3d 1266 (11th Cir. 2000). In *Prado-Steiman*, the Eleventh Circuit vacated class certification on the ground that the plaintiffs had not suffered the same injuries as all class members and did not, therefore, have standing to pursue all their claims. *See* 221 F.3d at 1280–81. Several of the plaintiffs, for example, were not eligible for certain Waiver Services under Florida's Medicaid program but brought claims on behalf of a class of recipients of those services. *See id.* at 1280.

3

The court reasoned that the plaintiffs' proposed class was "composed of too many subgroups with disparate legal claims," and, as a result, "there [we]re sharp differences amongst class subgroups in the type of conduct challenged and the type of injury suffered." *Id.* at 1280–81. The court followed the same reasoning as in *Fox*, concluding that class representatives must have the "same interest" and suffer the "same injury" as all class members. *See id.* at 1280.

Four years later, the Eleventh Circuit issued its opinion in *Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004), where it recognized that claims "based on principle[s] of law that [are] uniform among the states" are subject to class certification. *Id.* at 1262. The court clarified further that "if the applicable state laws can be sorted into a small number of groups, each containing materially identical legal standards, then certification of subclasses embracing each of the dominant legal standards can be appropriate." *Id.*

Though *Klay* did not address standing head-on, its conclusion that certification was a "realistic possibility," along with the court's obligation to consider standing as a threshold issue,[3] foreclose reading *Prado-Steiman* as prohibiting class representatives from representing class members with claims from states other than their own. *Cf. In re Checking Acct. Overdraft Litig.*, 2016 WL 5848730, at *4 (S.D. Fla. July 5, 2016) (requiring a named plaintiff from every state is "contrary to established practice and highly inefficient" and "conflate[s] the issue of whether the named Plaintiffs have standing . . . with . . . whether they can meet the requirements to certify a class under Rule 23");[4] *Margolius v. Metlife Ins. Co. of Conn.,* 2015 WL 11251737, at *4 (S.D. Fla. July 7, 2015) ("[A] class may be certified upon a showing of uniformity or the existence of only a small number of applicable standards among the laws of the fifty states.") (cleaned up); *Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1229 (S.D. Fla. 2015) ("[C]ourts in this Circuit permit named plaintiffs to represent class members with claims arising under other states' laws.").

---

[3] *See, e.g.*, *Jones v. Comm'r, Ga. Dep't of Corr.*, 811 F.3d 1288, 1295 (11th Cir. 2016) ("Standing is a threshold jurisdictional question which *must* be addressed prior to and independent of the merits of a party's claims.") (cleaned up; emphasis added).

[4] Chrysler relies on an earlier *Checking Overdraft* opinion to support its argument, but its holding applied only to state statutory claims. *See* 694 F. Supp. 2d 1302, 1324–25 (S.D. Fla. 2010).

4

Plaintiffs and all absent class members have the same interests and suffered the same injury. *See* Section I.A, *supra*. Accordingly, Plaintiffs can represent class members with materially identical claims arising under different states' laws.

## II. THE COURT HAS JURISDICTION TO HEAR PLAINTIFFS' MMWA CLAIMS.

Chrysler also argues that Plaintiffs cannot satisfy the MMWA's jurisdictional requirements because the MMWA requires at least 100 plaintiffs to pursue class claims in federal court. Resp. at 12; 15 U.S.C. § 2310(d)(3). Chrysler relies on *Floyd v. American Honda Motor Co.*, 966 F.3d 1027 (9th Cir. 2020), but better-reasoned authority holds that the Class Action Fairness Act ("CAFA") supersedes the MMWA's restriction. *See, e.g.*, *Kuns v. Ford Motor Co.*, 543 F. App'x 572, 574 (6th Cir. 2013) ("[D]istrict courts have, as a general rule, held that the CAFA effectively supersedes the MMWA's more stringent jurisdictional requirements."); *In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 568 F. Supp. 3d 837, 838 (E.D. Mich. 2021) (embracing *Kuns* as better-reasoned opinion); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 293 (S.D.N.Y. 2015) ("vast majority" of courts hold that CAFA supersedes MMWA).

## III. THE PUTATIVE CLASS IS ASCERTAINABLE.

"[A] proposed class is ascertainable if it is adequately defined such that its membership is capable of determination." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021). Chrysler argues that the proposed class is unascertainable because only consumers with manifested defects have sustained injuries entitling them to class membership. *See* Resp. at 13–14.

This Court has already held that consumers who have not experienced deployments have sustained injuries: "The injury alleged in this case is not the deployment of the AHR; it is the purchase of a vehicle with a latent defect." *Nuwer v. FCA US LLC*, 552 F. Supp. 3d 1344, 1354 (S.D. Fla. 2021). "[T]he defect alleged in the present case existed within the headrest when the vehicle was purchased and requires no intervening occurrences for the defect to manifest." *Id.* Accordingly, the AHR defect deprived *all* class members of the benefit of their bargains. *Id.*; *see Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 987 (11th Cir. 2016) (affirming FDUTPA certification: "The injury occurs at the point of sale because the false statement allows the seller to command a premium on the sales price."); *Cardenas v. Toyota Motor Corp.*, 2021 WL 6926418, at *26 (S.D. Fla. Aug. 12, 2021) (class including consumers without manifestation was

5

ascertainable).[5]

Chrysler's authority does not compel a different result. *Cordoba v. DIRECTV, LLC*, involved claims for violations of the Telephone Consumer Protection Act ("TCPA"), which, among other things, prohibits companies from telemarketing to consumers who have asked to be placed on a "do not call" list. *See* 942 F.3d 1259, 1264 (11th Cir. 2019). The court vacated class certification because absent class members who had *not* asked to be placed on a "do not call" list were not injured per the TCPA's terms. *See id.* at 1271, 1275–77. Similarly, in *Melton v. Century Arms* and *Ohio State Troopers*, the court declined to certify classes including both consumers who had purchased defective models of a product and consumers who had purchased different, non-defective models. *See Melton*, 2018 WL 6980715, at *5–6 (S.D. Fla. Nov. 28, 2018) ("[T]he record evidence fails to support Plaintiffs' contention that the Class Weapons all exhibit the Class Defect."); *Ohio State Troopers*, 347 F. Supp. 3d 1207, 1232 n.12 (S.D. Fla. 2018) ("The class is overbroad because it includes all individuals who purchased new SSBS vests, including vests that are not defective."). By contrast, here, all putative class members purchased vehicles with defective AHRs and suffered an economic injury; they overpaid for defective vehicles and were denied the benefit of their bargains with Chrysler. *See Nuwer*, 552 F. Supp. 3d at 1354.

The concerns raised by the court in *Harris v. Nortek Global HVAC LLC*, 2016 WL 4543108 (S.D. Fla. Jan. 29, 2016), are not present here. In *Harris*, the plaintiffs sought different compensation for class members who had experienced manifestation of the alleged defect and those who had not, with additional recovery (an additional diminution of value) provided to the former group. *See id.*, at *6. The court declined to certify a class and a subclass of members who had and had not experienced the defect, respectively, because, according to the plaintiffs' damages model, doing so would "potentially over compensate[] class members." *Id.* Here, all class members seek the same measure of damages. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Finally, in *Simmons*, the court relied on the inapposite authority distinguished above, without accounting for any factual distinctions. *See* 2022 WL 845127, at *11–12. *Simmons* is also

---

[5] *Cf. In re Takata Airbag Prod. Liab. Litig.*, 396 F. Supp. 3d 1101, 1120 (S.D. Fla. 2019) (rejecting contention that manifestation is required for injury and restating, "[i]f Takata had installed grenades in its airbags that may or may not explode on impact, a court would not require an explosion to demonstrate manifestation of a defect").

6

materially different from this case. As noted above, *see* p. 2–3, *supra*, the class vehicles in *Simmons* varied in their design and their "corrosion protection strategies" for different vehicle models. *See Simmons*, 2022 WL 845127, at *7. Thus, different model vehicles manifested the defect in different ways. *See id.* ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *See* Mot. at 13. The *Simmons* court's concern that "there must be an *injury*," 2022 WL 845127, at *12, has been resolved here—Plaintiffs and every class member were injured at the point of purchase. *See Nuwer*, 552 F. Supp. 3d at 1354.[6]

## IV. COMMON QUESTIONS PREDOMINATE OVER INDIVIDUALIZED ISSUES.

### A. The AHR Defect Was Common Across All Class Vehicles.

▬▬▬▬his defense, underlying every aspect of Chrysler's Response, does not defeat class certification.

The AHR defect was not a manufacturing defect. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

7



Because the defect is a design defect, then all class members were injured upon purchase and suffered the same economic harm. *See Nuwer*, 552 F. Supp. 3d at 1354.

That aside, Chrysler's argument fails because if the AHR defect was a manufacturing defect (it was not), then the answer to the central common question—whether Chrysler's AHRs carry a dangerous *design* defect—can be answered "in one stroke." *Dukes*, 564 U.S. at 351; *Alger*, 334 F.R.D. at 423–24 (rejecting same argument and concluding that questions of defect, knowledge, and safety were common).[9]

---

[7] 

[8]

[9] Chrysler contends that *Alger* is distinguishable from the present case; this argument can be done away with in short order. The distinctions Chrysler identifies are inapposite. *Alger* involved California consumer protection claims against the same defendant, addressing the same AHRs, the

The same logic disposes of Chrysler's argument that vehicles that have reached the end of their useful lives—measured by build date or mileage—are not properly counted among the Class Vehicles. *See* Resp. at 16. But even in these vehicles, the AHR defect caused economic harm because they were defective when sold. Regardless, the existence of an outer limit on build date and mileage would not defeat class certification. Were these factors deemed material to Plaintiffs' claims, Plaintiffs could simply tailor the Class to exclude vehicles built before June 5, 2012, or exceeding 150,000 miles of usage. *See Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 673–76 (S.D. Fla. 2012) (certifying, but limiting, class to exclude certain categories of borrowers).

**B. Individualized Questions of Knowledge Do Not Overcome Common Ones.**

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ "three years after Plaintiff Ginoris had purchased her vehicle." Resp. at 17. On this basis, it asserts that uncommanded deployments resulted from a manufacturing defect that affected only certain vehicles at particular times; therefore, Chrysler contends that the question of its knowledge of the defect cannot be resolved on a classwide basis.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

same Class Vehicles, and the very same defect at issue in this case. *See Alger*, 334 F.R.D. at 421. The court in *Alger* certified a statewide class, concluding that the existence of a defect, Chrysler's knowledge, and safety, *inter alia*, were all predominant common issues. *See id.* at 422–25. Notably, the court rejected the same arguments Chrysler raises here. *See id.* at 423–25. Although the court in *Alger* applied California law, Plaintiffs have established that their Florida and New York claims are equally amenable to certification.

9

██████████████████████████████████████████████████████████████████████

Because the AHRs were defective in their design, the plastic failures occurred alongside other conditions and continued after their resolution. ████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████ That Chrysler's AHRs contained additional defects does not undermine that they *all* also contained the defect here—an AHR composed of plastic susceptible to creep and ESC—rendering the existence of such defect common among all class members.

Finally, Chrysler contends that individual questions will arise as to its exclusive knowledge of the defect. *See* Resp. at 18. It bases this contention on a single local news article from December 2018—which no Plaintiff claims to have seen—reporting the allegations in the *Alger* suit. *See id.* Notably, the same article set forth Chrysler's unequivocal denial that any defect existed. *See id.*, Ex. BB. To be sure, Chrysler denies the existence of a defect to this day. The suggestion that any class member was put on notice in the face of Chrysler's denials defies logic. *Cf. In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 979–80 (N.D. Cal. 2018) (articles insufficient to put plaintiff on notice of defect where defendant had upgraded software and plaintiff "trusted [defendant] to fix whatever . . . would have been wrong").

### C. Whether Chrysler's AHRs Pose a Safety Risk Is a Common Question.

Chrysler contends the Court cannot certify a class because AHRs pose no safety risk. *See* Resp. at 18–19. Chrysler's argument is self-defeating. If the AHR defect is not dangerous, then the answer to a key common question is "no." Chrysler answers the question "in one stroke," *Dukes*, 564 U.S. at 351; its conclusion, however, is belied by the evidence.

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ Other consumers reported injuries to NHTSA and on online web fora. *See* Am. Compl. [D.E. 10] ¶¶ 86–87. Plaintiffs' expert, Dr. John Lloyd, tested the AHRs and concluded that uncommanded deployments pose a significant risk of traumatic brain injury. Mot. Ex. AA at 14; *see also Alger*, 334 F.R.D. at 427 ("Having a headrest

10

unexpectedly deploy while operating a motor vehicle would undoubtedly cause a great distraction with the potential to lead to catastrophic results.").

Chrysler argues that "whether the AHR presents an unreasonable safety risk for any particular vehicle will vary for each Subject Vehicle," but this contention depends on Chrysler's self-serving claims that the AHR defect is a manufacturing defect, which both goes to the merits of this case and is belied by the record evidence. *See* p. 7–9, *supra*. Because the AHR defect was a design defect, as the evidence shows, it was present in all Class Vehicles at the point of sale, presented the same safety risk in each AHR, and caused economic harm across the class.

Chrysler cites its own untested study of AHR failure rates and *Arrendondo v. Neven*, 763 F.3d 1122, 1131 (9th Cir. 2014), to argue that the Court must consider actual failure rates because "the rational calculation of risk requires multiplying the magnitude of a threatened loss by the probability of its occurrence." Resp. at 18. A "rational calculation of risk" is not required here; Plaintiffs do not seek damages based on the risk of harm. *See Nuwer*, 552 F. Supp. 3d at 1354 (distinguishing *Clapper* as involving hypothetical risk of harm and concluding: "The injury alleged in this case is not the deployment of the AHR; it is the purchase of a vehicle with a latent defect.").

### D. Materiality, Deception, and Actual Injury Are Common Questions.

<u>Materiality:</u> Chrysler contends that the materiality of its omissions will raise predominance issues, but again premises its argument on the contention that the defect is a manufacturing defect only affecting certain vehicles. *See* Resp. at 20. Again, whether the AHR defect was a design defect is a common question amenable to classwide resolution. *See* p. 7–9, *supra*.

And the evidence is clear, that the AHR defect is a dangerous design defect that affected all Class Vehicles. *See* Mot. at 13. The notion that the persistence of a dangerous defect—a flaw in the AHRs' design that causes head, neck, spine, and mild traumatic brain injuries—might be immaterial to some consumers defies common sense and cannot defeat class certification. *See Alger*, 334 F.R.D. at 427 ("Because Plaintiff contends the common defect poses a safety risk (itself a common question), Chrysler is incorrect that the individual questions of whether Chrysler's alleged omissions were material and whether class members relied on Chrysler's representations predominates and precludes class certification.").

<u>Deception:</u> Chrysler contends that there is "ample reason" to believe that class members were exposed to information about the defect and purchased their vehicles anyway. Resp. at 20–21. Again, Chrysler bases this contention on one news article, in which Chrysler assured consumers

11

that its vehicles were safe. *See id.* Chrysler has also deceived class members by refusing to issue a recall, and by failing to disclose that the AHRs ███████████████████████ susceptible to breakage. This affected Plaintiffs and all members of the putative class. Individual questions of deception will not arise. *See, e.g.*, *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 520 (S.D.N.Y. 1996) even when the issue of fraudulent concealment involves individual questions, "the common question of whether Defendants successfully concealed the existence of the alleged conspiracy predominates . . .").

Actual Injury: Addressing actual injury under New York law, Chrysler asks this Court to reconsider its reading of *Frank v. DaimlerChrysler Corp.*, 292 A.D.2d 118 (N.Y. App. 2002), and hold that "actual injury" under N.Y. GBL §§ 349 and 350 requires proof of a manifested defect. *See* Resp. at 21. Nothing in Chrysler's Response warrants a retreat from this Court's prior holding that *Frank* requires only evidence of an economic injury. *See Nuwer*, 552 F. Supp. 3d at 1357–58.

*Frank* aside, Chrysler relies primarily on *Marshall v. Hyundai Motor America*, 334 F.R.D. 36 (S.D.N.Y. 2019), for its position that actual injury "cannot be established through claims of economic injuries attributable to the product's failure to meet customer expectations." Resp. at 21. *Marshall*, however, is inapposite. The plaintiffs in *Marshall* sought to recover damages arising from an alleged "brake-related defect" in certain Hyundai vehicles. *See* 334 F.R.D. at 41. The vehicles at issue "had different types of brake problems . . . and saw those problems manifest differently[.]" *Id.* at 42. The named plaintiffs sought to recover the costs of repair, but "had different types of repairs and/or replacements." *Id.* In this context, the court held that "injury to the class could be proven *only* on the basis of individualized evidence." *Id.* at 57. The plaintiffs in *Marshall* claimed the diminished value of their vehicles, but, unlike here, did not plead losses arising from *pre*-sale deceptive conduct. *See id.* at 58. As the court lacked authority to award damages based on *post*-sale deceptive conduct, and because the plaintiffs did not show that they would have paid less absent that conduct, the court declined to certify a section 349 class. *See id.*

Here, all Class Vehicles have identical AHRs with the same defect. *See* p. 7–9, *supra;* Mot. at 13. Plaintiffs and all putative class members purchased their vehicles after Chrysler knew about the dangerous AHR defect.[10] ████████████████ The damages here are not speculative. Plaintiffs'

---

[10] Notably, the court in *Marshall* did not characterize the brake-related defect as dangerous. Its rejection of plaintiffs' benefit-of-the-bargain theory as "too speculative" must be considered in that context. Where, as here, however, class members were delivered vehicles containing a latent,

12

expert, Edward Stockton, quantifies the economic harm from overpayment due to the AHR defect on a classwide basis. *See* Mot. Ex. AAA at 7–10, 17–25; Ex. A at 8, 12. And because the AHR defect is a dangerous one, there is no question that class members would not have purchased their vehicles had Chrysler disclosed the defect. *See Takata*, *Alger*, n.9–10, *supra*.

### E. Common Questions Predominate on Plaintiffs' Unjust Enrichment Claims and Chrysler's Statute of Limitations Defense.

Chrysler contends that variances in state laws addressing unjust enrichment and statutes of limitation create predominant individualized issues. *See* Resp. at 23–25. But where, as here, core facts are common to the class, courts often certify multistate classes because the Court can appropriately manage differences in applicable state law. *See, e.g.*, *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1251, 1260 (11th Cir. 2003) (allowing class of 10,000 dealers in 35 states alleging defendant breached contracts by overcharging them); *Sullivan v. DB Inv., Inc.,* 667 F.3d 273, 301–02 (3d Cir. 2011) (grouping state law claims "advances the laudatory purposes of the class action device, preserving the resources of both the courts and the parties by permitting issues affecting all class members to be litigated in an efficient, expedited, and manageable fashion.") (cleaned up). This Court need not find absolute uniformity of state law, only that there are no material conflicts such that state law claims can be divided into subgroups. *See Sullivan*, 667 F.3d at 302 ("[I]f applicable state laws can be sorted into a small number of groups, each containing materially identical legal standards, then certification of sub-groups embracing each of the dominant legal standards can be appropriate.") (cleaned up); *Klay*, 382 F.2d at 1262. As demonstrated by Exhibit DDD to Plaintiffs' Motion, the differences among the states' unjust enrichment laws in this case are "minute and insignificant" such that predominance is satisfied. *In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271, 292 (S.D. Ohio 1997).

Chrysler attacks Plaintiffs' unjust enrichment survey on the ground that it fails to account for the distinction between states that require a direct benefit and those that do not, but this distinction does not present a significant manageability issue. Though New York and Florida law both require a "direct benefit," neither requires transactional privity. *See Tyman v. Pfizer, Inc.*,

---

dangerous defect, it is not speculative to conclude that no class member would have purchased their vehicle had they known. *See, e.g.*, *Alger*, 334 F.R.D. at 427 n.5 (E.D. Cal. 2020) ("Having a headrest unexpectedly deploy while operating a motor vehicle would undoubtedly cause a great distraction with the potential to lead to catastrophic results.").

2017 WL 6988936, at *19 (S.D.N.Y. Dec. 27, 2017) (plaintiff pleading unjust enrichment "need not be in privity with the defendant"); *Williams v. Wells Fargo Bank, N.A.*, 2011 WL 4368980, at *9 (S.D. Fla. Sept. 19, 2011) ("It would not serve the principles of justice and equity to preclude an unjust enrichment claim merely because the 'benefit' passed through an intermediary before being conferred on a defendant."). Many states follow the same or a materially similar rule.[11]

In any event, most absent class members purchased or leased their vehicles directly from Chrysler. Courts in this District and elsewhere routinely hold that consumers who purchase vehicles from an authorized dealership confer a direct benefit upon the manufacturer. *See, e.g.*, *Walton v. Grammer Indus. Inc.*, 2021 WL 4458761, at *9 (E.D. Mich. Sept. 29, 2021) ("In the automotive products liability context, courts have entertained claims for unjust enrichment against car manufacturers by vehicle purchasers even where the direct benefits—*i.e.*, payment for vehicle delivery—took place upstream[.]") (cleaned up); *Takata*, 2020 WL 2892366, at *14 (ruling "that under the laws of numerous states, a direct benefit is conferred on an automotive manufacturer where a plaintiff purchases or leases his or her vehicle from a dealership affiliated with the automotive manufacturer," listing 27 states); *Blendtec*, 500 F. Supp. 3d at 1292–93 (plaintiff stated unjust enrichment claim by alleging purchase from manufacturer's agent). Thus, those who purchased Class Vehicles from authorized dealerships comprise a manageable multistate class.

Regarding statutes of limitation, "[c]ourts consistently hold . . . that the statute of limitations does not bar class certification, even when individual issues are certain to exist." *In re Checking Acct. Overdraft Litig.*, 307 F.R.D. 656, 680 & n.17 (S.D. Fla. 2015) (collecting cases); *see In re Linerboard Antitrust Litig.*, 305 F.3d 145, 160–64 (3d Cir. 2002) ("Challenges based on the statute of limitations, fraudulent concealment, . . . or reliance have usually been rejected and will not bar predominance satisfaction because those issues go to the right of a class member to recover, in contrast to underlying common issues of the defendant's liability.").

---

[11] *See, e.g.*, *Johnson v. Blendtec, Inc.*, 500 F. Supp. 3d 1271, 1292 (D. Utah 2020) (Utah requires direct benefit, but critical inquiry is whether plaintiff "can establish that the relationship between his detriment and the defendant's benefit flows from the challenged conduct.") (cleaned up); *Aetna Inc. v. Insys Therapeutics, Inc.*, 324 F. Supp. 3d 541, 559 (E.D. Pa. 2018) (Pennsylvania: unjust enrichment viable if "the benefit is not too attenuated to support equitable relief"); *Burns v. Toyota Motor Sales, U.S.A., Inc.*, 2015 WL 11117157, at *4 (W.D. Ark. Apr. 23, 2015) (even in states requiring direct benefit, "courts do not always apply the requirement in a rigid fashion"); *McNaughton–McKay Elec. Co. v. Limamar Corp.*, 2010 WL 3180402 (E.D. Mich. Aug. 11, 2010), (Michigan: "a benefit may be unjustly obtained by a defendant through an intermediary").

### F. Plaintiffs' Damages Methodology Is Sound.

Chrysler contends that the cost of repairing the AHR defect is not a reliable proxy for measuring lost benefit of the bargain damages because "FDUTPA does not cover repair costs." Resp. at 26. Judge Moreno rejected this very argument in *Tershakovec v. Ford Motor Co.*, 546 F. Supp. 3d 1348 (S.D. Fla. 2021), holding that Mr. Stockton's model "calculates how much a class member 'overpaid' for his vehicle" and "would accurately measure either benefit of the bargain or out of pocket damages." *Id*. at 1379.

Chrysler relies on *Simmons* and *Ohio State Troopers*, both of which were issued by the same court. *Simmons* stands in direct conflict with *Tershakovec*. Plaintiffs submit that Judge Moreno's opinion in *Tershakovec* is the better-reasoned. *See also In re Gen. Motors LLC Ignition Switch Litig.*, 407 F. Supp. 3d 212, 226 (S.D.N.Y. 2019) ("[T]he Court concludes that, . . . the core measure of benefit-of-the-bargain damages in an automotive defect case . . . is the cost to repair the defect, thereby restoring to plaintiffs the defect-free car for which they bargained.").

Chrysler next argues that Mr. Stockton's model cannot be used under New York law because recovery requires a manifested defect. Manifestation is not required under New York law. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015).

Finally, Chrysler argues that Plaintiffs have not presented a damages model for unjust enrichment. But benefit of the bargain and restitution theories of recovery operate alike in this context—they restore the plaintiff to the position she would have occupied had the defect been cured pre-sale. *See Falco v. Nissan N. Am. Inc.*, 2016 WL 1327474, at *12 (C.D. Cal. Apr. 5, 2016) ("By receiving restitution in the amount of average repairs, the class would be getting the benefit of their bargain[.]").[12]

### CONCLUSION

The Court should grant Plaintiffs' Motion for Class Certification.

Respectfully submitted this 28th day of July, 2022.

---

[12] Plaintiffs have also pled injunctive relief on behalf of a Rule 23(b)(2) class, which the Court may grant as part of, or in the alternative to, a class under Rule 23(b)(3). *See Alger*, 334 F.R.D. at 431 (injunctive relief as part of 23(b)(3) class); *Mueller v. Puritan's Pride, Inc*., 2021 WL 5494254, at *9 (N.D. Cal. Nov. 23, 2021) (certifying 23(b)(2) class in alternative to 23(b)(3) class).

| | |
|---|---|
| Benjamin Widlanski, Esq.<br>Florida Bar No. 1010644<br>bwidlanski@kttlaw.com<br>Harley S. Tropin, Esq.<br>Florida Bar No. 241253<br>hst@kttlaw.com<br>Gail McQuilkin, Esq.<br>Florida Bar No. 969338<br>gam@kttlaw.com<br>Rachel Sullivan, Esq.<br>Florida Bar No. 815640<br>rs@kttlaw.com<br>Robert J. Neary, Esq.<br>Florida Bar No. 81712<br>rn@kttlaw.com<br>Katherine A. Mitchell, Esq.<br>Florida Bar No. 1018647<br>kmitchell@kttlaw.com<br>**KOZYAK TROPIN &**<br>**THROCKMORTON LLP**<br>2525 Ponce de Leon Blvd., 9th Floor<br>Coral Gables, Florida 33134<br>Tel: (305) 372-1800<br>Fax: (305) 372-3508<br><br>*Counsel for Plaintiffs* | Peter Prieto, Esq.<br>Florida Bar No. 501492<br>pprieto@podhurst.com<br>John Gravante, III, Esq.<br>Florida Bar No. 617113<br>jgravante@podhurst.com<br>Matthew Weinshall, Esq.<br>Florida Bar No. 84783<br>mweinshall@podhurst.com<br>**PODHURST ORSECK, P.A.**<br>SunTrust International Center<br>One S.E. 3rd Ave., Suite 2700<br>Miami, Florida 33131<br>Tel: 305-358-2800<br>Fax: 305-358-2382<br><br>*Counsel for Plaintiffs* |
| George Franjola<br>Florida Bar No. 333271<br>gfranjola@franjolalaw.com<br>**LAW OFFICE OF GEORGE FRANJOLA**<br>1740 SE 18th Ave., Suite 901<br>Ocala, Florida 34471<br>Telephone: (352) 812-0462<br><br>*Counsel for Plaintiffs* | Michael Burger, Esq. (admitted *pro hac vice*)<br>mike@litgrp.com<br>**SANTIAGO BURGER LLP**<br>2280 East Avenue<br>Rochester, New York 14610<br>Tel: (585) 563-2400<br>Fax: (585) 563-7526<br><br>*Counsel for Plaintiffs* |

## CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By: /s/ Benjamin Widlanski