UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-60432-CIV-SINGHAL

**JASON NUWER**, *et al.*,

    Plaintiffs,

v.

**FCA US LLC f/k/a
CHRYSLER GROUP LLC**,

    Defendant.

_____/

**DECLARATION OF ROBERT J. NEARY**

I, Robert J Neary, hereby make this declaration pursuant to 28 U.S.C. § 1746.

1. My name is Robert J. Neary. I am a member of this Court's Bar, and make this declaration based on my personal knowledge.

2. I am counsel to Plaintiffs in this action, together with four other attorneys at Kozyak Tropin & Throckmorton LLP ("KTT") and four attorneys at Podhurst Orseck, P.A. ("Podhurst").

3. Of all of Plaintiffs' attorneys, I am the attorney with primary responsibility for conferring with counsel for Defendant FCA US LLC on discovery, class notice, and a variety of other pretrial issues, and generally oversee the day-to-day management of discovery and the administration of Plaintiffs' case.

4. On August 7, 2023, this Court ordered FCA to "provide Class Counsel the VIN numbers for Class Vehicles and the mailing lists for the extended warranty for the Class Vehicles no later than August 15, 2023." ECF No. 241.

5. On August 11, 2023, FCA produced two spreadsheets, one listing original purchases and leases of new Class Vehicles in Florida (approximately 200,000 vehicles total) and the other purporting to reflect extended warranty mailings in Florida (approximately 176,000 vehicles listed). When I inquired about the omission of used Class Vehicles from the two lists, FCA's counsel represented that FCA cannot identify used vehicles sold by its authorized dealers and therefore could not provide the VIN numbers for used Class Vehicles.

6. In response, I requested a list of all current owners of used vehicles, even if that list included owners who had not purchased their vehicles from authorized dealers.

7. Still maintaining that they could not provide a list of used sales by authorized dealerships, FCA's counsel directed me to a spreadsheet produced in discovery that purportedly included all VINs of vehicles sold nationwide with an AHR. The spreadsheet set forth data listing the state associated with each VIN, but did not indicate whether that referenced the state of purchase or the state of the owner's residence when the list was created. After several inquiries, FCA counsel explained that the list showed the state of the original sale.

8. This response raised additional questions, because the spreadsheet listed more than 600,000 vehicles in Florida—at least 400,000 more than the previously produced spreadsheet showing approximately 200,000 such vehicles. After several weeks and additional inquiries about this discrepancy, FCA's counsel finally responded, representing that this larger list included Florida owners that had not

purchased their vehicles in Florida—a contradiction of counsel's prior representation that the vehicle list showed "the state of original sale."

9. I followed up several times with FCA's counsel seeking clarification on the contradictory statements, but received no response until six weeks later, after I notified FCA's counsel that Plaintiffs intended to file a motion to compel accurate class data. The next day, FCA's counsel responded to represent that the list did not show original sales but instead showed the state of vehicle registration.

10. Instead of clarifying the data on Class Vehicles this raised yet another discrepancy: why the latest spreadsheet included approximately 425,000 more vehicles than the extended warranty spreadsheet (which should have also been a listing of all Florida-registered vehicles with AHRs).

11. When I raised this discrepancy, FCA's counsel responded that the extended warranty list they had provided in response to the Court's Order omitted the VINs of FCA's most popular vehicle, the Jeep Grand Cherokee and blamed this oversight on a third-party vendor.

12. On November 21, FCA produced its fourth spreadsheet relating to Class Member data. This spreadsheet now listed approximately 357,000 vehicles—still at least 200,000 fewer than FCA had included on the prior list of purported current registrations.

13. As a result of this steady flow of discrepancies and contradictions, Plaintiffs' counsel could not discern if FCA had "provid[ed] to Class Counsel the VIN numbers for Class Vehicles" in compliance with the Court's Order. Accordingly,

following FCA's last disclosure, and unable to rely on FCA's counsel's word, Plaintiffs' counsel determined that the only way to secure accurate information on the Class Vehicles was to subpoena every authorized FCA dealer in Florida and request documents and information disclosing the VINs of every FCA Class Vehicle sold or leased in the state. Plaintiffs' counsel hoped to cross-reference the dealers' information with the various FCA spreadsheets.

14. On November 28, 2023, during the parties' conferral on the substance of their respective motions *in limine*, which I conducted with co-counsel from Podhurst, we informed FCA's counsel that Plaintiffs would move to exclude any reference to the Class's aggregate damages because the class size had not yet been determined due to FCA's inability to identify used car sales and resolve the outstanding discrepancies. During this conversation, we also informed FCA's counsel that we knew that other OEMs had been able to access data reflecting used-car sales in other litigation.

15. Nine days later, on December 7, 2023, FCA's counsel informed me for the first time that FCA could, in fact, identify used car sales and leases from authorized dealers. According to FCA's counsel, the FCA employee in charge of managing the relevant data now realized that his team had been "wrong" about FCA's access to used-car sales data.

16. At the same time, FCA's counsel reported that the last spreadsheet FCA had provided to Plaintiffs' counsel on new car sales and leases was deficient because, like the extended warranty list that omitted data about Jeep Grand Cherokees, the spreadsheet on new car sales omitted sales and leases of new Chrysler minivans.

17.     FCA's counsel finally produced an updated new car sale spreadsheet and a used car sale spreadsheet on December 7, 2023. I asked the Claims Administrator to review the spreadsheets and identify any Class members whom Chrysler had not previously disclosed. The Claims Administrator later reported that it had reviewed the spreadsheets and identified approximately 4,500 undisclosed Class members.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 22nd day of December, 2023, in Miami-Dade County, Florida.

/s/ Robert J. Neary