UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60432-CIV-SINGHAL

JASON NUWER,

    Plaintiff,

vs.

FCA US LLC,

    Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court on Defendant FCA US LLC's ("FCA") Rule 50(a) Motion for Judgment as a Matter of Law. (DE [355]). This class action was tried to a jury in January 2024. At the close of Plaintiff's evidence, FCA raised five grounds for a judgment as a matter of law: (1) no reasonable jury could find a safety defect affecting all AHRs; (2) no reasonable jury could find Defendant knew about a safety-related defect affecting all AHRs before January 1, 2013; (3) Defendant did not engage in deceptive or unfair conduct; (4) no reasonable jury could find class-wide causation; and (5) no reasonable jury could find class-wide damages.

The Court reserved ruling on the motion and permitted the case to go to the jury.[1] After the jury rendered its decision, Plaintiff filed a response (DE [371]) and the motion is ripe for review. The Court has struggled with this decision because of the extremely small

---

[1] On January 30, 2024, the jury answered "yes" to the question "Do you find that plaintiff Jason Nuwer, on behalf of the Class, has proven by a preponderance of the evidence that FCA US LLC has violated the Florida Deceptive and Unfair Trade Practices Act?" and "no" to the question, "Was FCA US LLC's deceptive and unfair act or practice the cause of the actual damages sustained by each class member?" (DE [363]).

percentage of AHRs that inadvertently deployed. For the reasons discussed below, however, the motion is denied.

"Rule 50 motions should be granted 'only when the plaintiff presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his cause of action.'" *St. Louis Condo. Ass'n, Inc. v. Rockhill Ins. Co.,* 5 F.4th 1235, 1242 (11th Cir. 2021) (quoting *Howard v. Walgreen Co.,* 605 F.3d 1239, 1242 (11th Cir. 2010)). The motion should be denied "if the plaintiff presents enough evidence to create a substantial conflict in the evidence on an essential element of the plaintiff's case." *Pickett v. Tyson Fresh Meats, Inc.,* 420 F.3d 1272, 1278 (11th Cir. 2005).

This is a case under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). The three elements of a consumer claim under FDUTPA are "(1) a deceptive act or unfair practice, (2) causation, and (3) actual damages." *Marrache v. Bacardi U.S.A., Inc.,* 17 F.4th 1084, 1097 (11th Cir. 2021). "A deceptive act or practice is one that is likely to mislead consumers and an unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Partners Biomedical Solutions, LLC v. Saltsman,* 2021 WL 5759343, at *3 (S.D. Fla. Dec. 3, 2021) (citations omitted).

Plaintiff alleged that FCA deceptively failed to advise consumers that several automobile models had active head restraints ("AHRs") with a safety defect, namely, that the AHRs were made with an inferior plastic that is subject to weakening over time, resulting in a risk of inadvertent deployment. Throughout the Amended Complaint,

Response to Motion to Dismiss, and class certification briefing, Plaintiff has argued that inadvertent deployments caused by the defective plastic pose a safety hazard.[2]

### Safety Defect

FCA argues that no reasonable jury could find the presence of a safety defect affecting all AHRs in the Class Vehicles. FCA claims the evidence is undisputed that only 0.23 percent of AHRs nationwide inadvertently deployed and in Florida the failure rate rose to only 0.92 percent. Because over 99% of Class Vehicles never manifested a defect, FCA US argues that no reasonable jury could find the AHRs failed to satisfy consumer expectations.[3]

Plaintiff responds that this is a FDUTPA case, not a products liability case, and the consumer expectation test does not apply. According to the Eleventh Circuit case *Carriuolo v. General Motors Co.,* 823 F.3d 977, 987 (11th Cir. 2016), FDUTPA injuries arise at the point of sale. Plaintiff argues, therefore, that the manifestation rate or actual safety risk are not material elements of the FDUTPA claim. According to Plaintiff, "the question for the jury is whether FCA's failure to disclose the possibility of an inadvertent deployment was objectively unreasonable or unfair, *regardless of the safety risk posed by the alleged defect.*" (DE [371] p. 7) (emphasis in original). Plaintiff made the same

---

[2] The Amended Complaint's FDUTPA claim (DE [10]) includes the word "safety" more than 70 times. *Id.* ¶¶ 1-140; 251-262.
[3] FCA US also argues that the low failure rate and "spikes" in the rate of inadvertent deployments are consistent with a manufacturing problem, not a design defect. Plaintiff presented sufficient evidence in opposition to these arguments that the Court cannot conclude as a matter of law that the inadvertent deployments were caused by a manufacturing problem. *See* Plaintiff's Response in Opposition (DE [371] p. 10).

argument at trial, notwithstanding that his pretrial pleadings and motions repeatedly referred to the safety threat caused by inadvertent deployments.

The Court understands this is a FDUTPA case, not a products liability case. But Plaintiff's FDUTPA claim alleged that FCA failed to disclose a "defect"; the existence of an undisclosed defect is a material element of the FDUTPA claim. By necessity the existence of a defect must be determined according to Florida law. *Cf. Suntree Techs., Inc. v. Ecosense Int'l, Inc.,* 693 F.3d 1338, 1345 (11th Cir. 2012 (FDUTPA claim analyzed under same standards used for Lanham Act claim). Thus, prior to trial the Court determined that "defect" would be defined by Florida's consumer expectation test: "the appropriate definition of a defect is whether the AHR 'failed to perform as safely as an ordinary consumer would expect when used as intended or in a manner reasonably foreseeable by the manufacturer.'" (DE [305] ¶ 6) (citing *Messina v. Ethicon,* 2020 WL 7419585, at *4 (M.D. Fla. Dec. 17, 2020) (quoting *Tillman v. C.R. Bard,* 96 F. Supp. 3d 1307, 1338-39 (M.D. Fla. 2015)).[4]

Plaintiff alleged and has produced sufficient evidence to raise a substantial conflict on the issue of whether the AHRs contained a design safety defect. Although FCA argues that spikes in failure rates evidenced a manufacturing defect, witnesses testified that the plastic FCA selected for the AHR sled housing and pin retainer is incompatible with several chemicals comprising the pin coating FCA approved for the AHR striker pin. These experts also testified that when placed in constant contact with the plastic, under pressure, the same chemicals caused the plastic to degrade and trigger environmental stress cracking ("ESC"). Several witnesses (including FCA employees) did conclude that

---

[4] "[T]he consumer expectations test is the default under Florida law." *Cates v. Zeltiq Aesthetics, Inc.,* 73 F.4th 1342, 1351 (11th Cir. 2023).

the combination of the type of plastic and the pin coating was the root cause of AHR inadvertent deployments. And Plaintiff testified that he would not have expected an AHR to inadvertently deploy, thus the consumer expectation test was satisfied.[5]

FCA contends that inadvertent deployments in less than 1% of AHRs cannot, as a matter of law, rise to the level of a "defect" as defined by Florida law. But Plaintiff responds that because ESC is a progressive and variable failure mode, "the number of AHR failures that occurred out of warranty (and which may have gone unreported) necessarily exceeds that number that FCA used to calculate its failure rate." (DE [371] p. 9).  Todd Gramlich, an FCA employee, admitted that FCA's failure rate undercounts inadvertent deployments that occurred outside the warranty period. And, further, the Court cannot say as a matter of law that even a very slight chance of an inadvertent deployment is not a defect in the eyes of a reasonable consumer. The jury saw evidence that FCA's Owner Manuals (in 2010, 2011, and 2013) warned consumers that accidental deployments of AHRs could cause personal injuries. FCA's acknowledgement that a deployed AHR could cause personal injuries raised a substantial conflict of whether the AHRs had an undisclosed safety defect.

**FCA's Knowledge of a Safety Related Design Defect**

FCA argues that even if there is evidence to support Plaintiff's claim that the AHRs had a safety defect, there is no evidence that FCA knew about the safety defect before January 1, 2013. This argument fails because Plaintiff did submit evidence from which a jury could find that FCA knew or had reason to know that the AHRs had a safety defect. First, Plaintiff introduced evidence of AHR failures that occurred before January 1, 2013.

---

[5] Plaintiff testified that, at the time of trial, he still owns—and his wife still drives daily—his Class Vehicle. This fact raises a valid question about materiality, but it is an issue for the jury to resolve.

Second, Plaintiff introduced evidence that FCA knew in early 2000 that instrument panels made with PC/ABS experienced ESC when they were fastened to the vehicle with screws coated with chemicals that were incompatible with PC/ABS. Nevertheless, the specifications for the striker pin FCA approved for the AHRs called for a primer and topcoat incorporating esters, aromatics, and chlorinated hydrocarbons as ingredients. Further, the PC/ABS manufacturer's brochure warned that "Bayblend parts are subject to surface dwelling or dissolving by aromatics, ketones, esters, and chlorinated hydrocarbons." Finally, as discussed above, FCA's own publications acknowledged that inadvertent deployments of AHRs could result in personal injuries. Though arguably scant, Plaintiff did raise a substantial enough conflict on whether FCA knew or should have known of a safety design defect to present the case to the jury.

### **Deceptive or Unfair Conduct**

FCA argues that no reasonable jury could find that FCA engaged in deceptive or unfair conduct toward all class members at the time of sale. This argument relies on three premises: (1) no reasonable jury could find that FCA knew about a safety related design defect before January 1, 2013; (2) the ESC defect was not material because of the miniscule rate of inadvertent deployments in the Class Vehicles; and (3) inadvertent deployments of AHRs are not a safety issue. These arguments were raised, and rejected, *infra.* Plaintiff introduced evidence to raise a substantial conflict on whether FCA engaged in deceptive or unfair conduct in violation of FDUTPA.[6]

### **No Evidence of Class-wide Causation**

---

[6] In fact, the jury found in favor of Plaintiff on this issue.

FCA argues that Plaintiff did not establish causation because he had not reviewed any advertisements or brochures before he purchased his vehicle; indeed, he knew the vehicle he wanted before he went to the dealership. And FCA argues that the class should be decertified because the element of causation requires individual inquiries.

The Court agrees with Plaintiff that this argument is a thinly veiled attempt to incorporate a reliance element into FDUTPA. "[A] FDUTPA plaintiff needn't prove that he or she relied on any alleged misstatement…. *Tershakovec v. Ford Motor Co., Inc.,* 79 F.4th 1299, 1311 (11th Cir. 2023). FDUTPA provides a remedy for diminution of market value. *Carriuolo v. General Motors Co.,* 823 F.3d 977, 986-87 (11th Cir. 2016). Plaintiff testified that he would not have purchased his FCA vehicle if the AHR defect had been disclosed. It was not necessary under FDUTPA for Plaintiff or any class member to have reviewed advertisements or brochures.

### **Class-wide Damages**

FCA argues that no reasonable jury could find class-wide damages and it is entitled to judgment as a matter of law. The jury, in fact, found that the class did not sustain any damages. But the evidence at trial supported Plaintiff's claim that a latent defect existed at the time of sale. FDUTPA damages are measured at the time of sale. *Id.* at 987 ("The injury occurs at point of sale because the false statement allows the seller to command a premium on the sales price."). It is not for this Court to determine how broad the FDUTPA statute should be, but the Court certainly recognizes how broad the Eleventh Circuit and Florida courts say it is. FCA is not entitled to judgment as a matter of law on the issue of class-wide damages because Plaintiff raised a substantial conflict at trial.

For these reasons, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Rule 50(a) Motion for Judgment as a Matter of Law (DE [355]) is **DENIED.** A separate judgment will be entered.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 19th day of July 2024.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF