UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60432-CIV-SINGHAL

JASON NUWER, *et al.*,

    Plaintiffs,

v.

FCA US LLC,

    Defendant.

_____/

**ORDER**

**THIS CAUSE** is before the Court on Plaintiff's Motion for New Trial. (DE [393]). The motion is fully briefed and ripe for review. For the reasons set forth below, the Motion for New Trial is denied.

I.    BACKGROUND

Plaintiff, Jason Nuwer ("Nuwer"), on behalf of himself and a class of individuals who purchased or leased certain vehicles manufactured by Defendant FCA US LLC ("FCA"), alleged that FCA violated the Florida Unfair and Deceptive Trade Practices Act ("FDUTPA") by selling vehicles in Florida that it knew or should have known contained a material defect. Nuwer alleged that the vehicles' active head restraints ("AHR") were marketed as a safety feature that were designed to employ and restrain occupants' heads in the event of a rear collision. But, according to Nuwer, the AHRs were designed and made with a low-quality plastic that sustained stress cracks over time, resulting in AHRs deploying when not commanded by the vehicle's computer sensor. Nuwer alleged that no reasonable consumer expected to purchase or lease a vehicle with a defective AHR that exposed them to a serious safety hazard.

Nuwer alleged that FCA engaged in unfair and deceptive trade practices that violated FDUTPA in the following (and other, unidentified) ways:

    a. Chrysler represented that the Class Vehicles have safety characteristics that they do not have;

    b. Chrysler represented that the Class Vehicles are of a particular standard, quality, or grade, when they are not;

    c. Chrysler knew of the inferior plastic used in the AHR and that it fails under normal use but failed to disclose the existence of this defect to consumers or NHTSA. Chrysler knew that such information was material to consumer transactions and vehicle safety;

    d. Chrysler actively concealed and misrepresented the true nature of the AHR defect; and

    e. Chrysler intended for the Florida Plaintiffs and Florida Subclass members to rely on their misrepresentations and omissions so that the Florida Plaintiffs and Florida Subclass members would purchase or lease Class Vehicles.

(DE [10] ¶ 145). Nuwer also alleged that FCA "knew or should have known that its conduct violated the FDUTPA." *Id.* ¶ 148. Nuwer claimed that he and the class members were damaged because they paid to own or lease vehicles without a safety defect in the headrests and instead received and overpaid for vehicles containing defective AHRs. *Id.* ¶ 149. FCA denied the vehicles had a safety defect that caused damage to the class plaintiffs.

The case was tried to a jury in January 2024. The jurors answered two questions:

    1. Do you find that Plaintiff Jason Nuwer, on behalf of the Class, has proven by a preponderance of the evidence that FCA US LLC has violated the Florida Deceptive and Unfair Trade Practices Act?

        YES __X__        NO _____

       2. Was FCA US LLC's deceptive or unfair act or practice the cause of the actual damages sustained by each class member?

           YES \_\_\_\_\_           NO \_\_X\_\_

Nuwer seeks a new trial on several grounds: (1) the verdict was against the weight of the evidence; (2) the exclusion of evidence that the manufacturer switched from oil-coated pins to stainless steel pins was error and caused substantial prejudice; and (3) requiring Plaintiff to prove a design defect was error.

## II. LEGAL STANDARDS

A court may grant a new trial after a jury verdict "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "The decision whether to grant a new trial is discretionary with the district court and will not be reversed absent an abuse of that discretion." *Burger King Corp. v. Mason,* 710 F.2d 1480, 1486 (11th Cir. 1983).

Reasons for granting a new trial include (1) the verdict is against the weight of the evidence, (2) damages are excessive, (3) the trial was not fair to the moving party, and (4) there were "substantial errors in admission or rejection of evidence or instructions to the jury." *SEC v. Complete Bus. Sols. Grp., Inc.,* 608 F. Supp. 3d 1231, 1239 (S.D. Fla. 2022) (quoting *Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*, 432 F. Supp. 2d 1319, 1334 (S.D. Fla. 2006) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940))).

## III. DISCUSSION

### A. Weight of the Evidence

Plaintiff argues the jury's verdict was against the weight of the evidence. Where the request for a new trial is based on evidentiary rulings made during trial, "the question is whether the exclusion or admission of evidence affected [the movant's] substantial

3

rights." *Id.* (citing *Perry v. State Farm Fire & Cas. Co.*, 734 F.2d 1441, 1446 (11th Cir. 1984). "Error in the admission or exclusion of evidence is harmless if it does not affect the substantial rights of the parties." *Id.*

The jury found that FCA's deceptive or unfair act or practice was not the cause of actual damages sustained by each class member. According to Plaintiff, the testimony of its economic expert, Edward Stockton, was uncontradicted and unimpeached and, therefore, the jury was not free to disregard his measure of damages. "In considering the sufficiency of the evidence that supports the jury's verdict, we review the evidence in the light most favorable to, and with all reasonable inferences drawn in favor of, the nonmoving party." *MidlevelU, Inc. v. ACI Info. Grp.*, 989 F.3d 1205, 1214 (11th Cir. 2021) (quoting *Montgomery v. Noga*, 168 F.3d 1282, 1289 (11th Cir. 1999)).

"The three elements of a consumer claim under FDUTPA are: '(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.'" *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1097 (11th Cir. 2021) (quoting *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985-86 (11th Cir. 2016)). Damages under FDUTPA occur when, as a result of a deceptive act or an unfair practice, the consumer is deprived of the benefit of his bargain. *Debernardis v. IQ Formulations, LLC,* 942 F.3d 1076, 1084 (11th Cir. 2019). Benefit of the bargain damages are calculated as "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Id.* (quoting *Rollins, Inc. v. Heller,* 454 So. 2d 580, 585 (Fla.3d DCA 1984)).

Stockton offered his opinion that the retail cost to repair the headrests could serve as a proxy for measuring the difference in market value between a vehicle with the

4

purported defect and one without the defect.[1] With that assumption, he opined that Plaintiff Nuwer's damages would be $1,359.00, *i.e.,* the cost to replace the vehicle's two headrests. (DE [348] p. 20). For the entire class, Stockton's estimate of damages exceeded $8 billion. *Id.* p. 62. The jury found that FCA committed a deceptive act or practice in selling the class vehicles but that the deceptive act or practice was not a cause of damage to the class members. Plaintiff argues the jury's determination of damages is against the manifest weight of the evidence.

"New trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great – not merely the greater – weight of the evidence." *Lamonica v. Safe Hurricane Shutters, Inc.,* 711 F.3d 1299, 1312-13 (11th Cir. 2013) (quotations omitted). "The general rule is that opinion testimony of expert witnesses is not of controlling effect, and a jury is not absolutely required to accept opinions of experts in the place of its own judgment." *New York Life Ins. Co. v. Johnston,* 256 F.2d 115, 118 (5th Cir. 1958);[2] *see also Boon Enterprises, Inc. v. Carstairs,* 312 F.2d 323 (5th Cir. 1963) (per curiam) ("it must be borne in mind that this Court has repeatedly held that a trier of the facts need not accept the opinion testimony of expert witnesses, even though uncontradicted"). Indeed, the Eleventh Circuit's Pattern Jury Instruction on expert witnesses –given by this Court – adopts this same rule:

> When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter. But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

---

[1] The Court permitted Stockton to testify to the proxy measure of damages over FCA's objection. *See* Order (DE [204]).

[2] Decisions of the old Fifth Circuit, as that court existed on September 30, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1209 (11th Cir. 1981).

(DE [364], p. 8).

Significantly, Nuwer offered no expert testimony about the market value of the vehicles with and without the defective AHRs. Through Stockton, he offered a proxy measure of damages, a measure which the jury was entitled to reject. And regardless of whether the jury accepted the proxy damage theory, the trial evidence strongly supported their conclusion that FCA's deceptive or unfair act or practice did not cause damage to the class members. The rate of inadvertent deployments is exceedingly (and shockingly) low (less than 1%). No class member testified to being injured or not being able to sell his class vehicle. The impact of an AHR deployment was compared to the force of a confetti-filled eggshell and less than the force of an infant jumping swing. FCA offered an extended warranty to repair any deployed AHRs free of charge. And, strikingly, Plaintiff Nuwer testified he had no problems with his vehicle, never thought about suing FCA until he was approached by a lawyer at a party, and at the time of the trial, his wife was still driving the vehicle. Although many of these facts developed *after* many of the class vehicles were purchased, they are relevant to the issue of whether FCA's deceptive acts caused damage to the class. Given the extremely low rate of failure of the AHRs and the low impact the AHRs presented to consumers, the jury's finding on damages is supported by the manifest weight of evidence. This is not a ground for a new trial.

B. <u>Exclusion of Evidence of Stainless Steel Pins</u>

Plaintiff argues for a new trial on the ground that the Court erroneously excluded evidence that the AHR manufacturer switched to using stainless steel pins in 2020. FCA introduced evidence that Grammar began to "wash" the pins in 2017 and argued that the "wash" solved the problem. Plaintiff argues he should have been permitted to introduce the change to stainless steel pins to rebut FCA's argument and show that the defect was a design defect, not a manufacturing defect.

To obtain a reversal due to an erroneous evidentiary ruling, the movant must establish that "(1) its claim was adequately preserved; (2) the district court abused its discretion in interpreting or applying an evidentiary rule; and (3) this error affected a substantial right." *Proctor v. Fluor Enterprises, Inc.,* 494 F.2d 1337, 1349 (11th Cir. 2007) (cleaned up; quotations omitted).[3]

Plaintiff first argues that the change to stainless steel pins was not a subsequent remedial measure under Fed. R. Evid. 407 because the change was made by a non-party. *See Millennium Partners, L.P. v. Colmar Storage, LLC,* 494 F.3d 1293, 1303 (11th Cir. 2007) ("Rule 407 does not apply to a remedial measure that was taken without the voluntary participation of the defendant."). The testimony clearly showed that the AHR manufacturer, Grammar, could have made the pin out of stainless steel if it wanted. *See* Testimony Marijana Cestaric (DE [351] p. 80). And Grammar was dismissed as a party early in the case.  Plaintiff argues, therefore, that the Court erred in not permitting evidence of the change to stainless steel pins in 2020.

The problem is that "evidence not excluded by Rule 407, of course, must still be relevant and its probative value must, under Rule 403, outweigh any dangers associated with its admission."  *Dixon v. Internat'l Harvester Co.,* 754 F.2d 573, 584 (5th Cir. 1985). The stainless steel pins were not used until 2020, which is at least two years after the last class vehicle was manufactured. To that end, the Court stated:

> I think you all can talk about the stainless steel pin as a possible fix, but I don't think you can talk about it as an actual fix that was a subsequent remedial measure. So just like how you were suggesting, hey, they could have recalled, you could say they could have put in stainless steel pins. But once it gets to here's what they did, here's a subsequent remedial measure in 2018, or something like that, I don't think that's relevant.

---

[3] Plaintiff more than adequately preserved his request to introduce the stainless steel pins. His lawyers made at least five attempts to introduce evidence that the pins were changed to stainless steel in 2020.

Transcript, Day 7 (DE [343] p. 17). The issue in this class action was whether FCA was deceptive at the time the first class vehicle was sold in 2013 by failing to disclose that the AHRs contained a design defect. Evidence that the AHRs were changed in 2020, after the close of the class period, has no relevance. This is especially true where the evidence showed that less than 1% of the millions of vehicles produced between 2013 and 2018 (before the change to stainless steel pins) suffered an inadvertent AHR deployment. And further, considering the miniscule deployment rate in vehicles made between 2013 and 2018, and the evidence that a deployed AHR exerts minimal force that is unlikely to cause injury or an accident,[4] the probative value of evidence of a change to stainless steel pins in the year 2020 is substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. See Fed. R. Civ. P. 403. This Court did not abuse its discretion in excluding evidence that in 2020 Grammar switched to using stainless steel pins.

      Finally, even if it were an error to exclude this evidence, its exclusion did not affect a substantial right. Plaintiff submitted substantial evidence to show that the plastic used in the AHR was not suitable, that deployments occurred even after the 2017 "clean point," and that using stainless steel pins would have been a better design to prevent environmental stress cracking.  Plaintiff had ample opportunity and evidence to convince the jury that FCA sold defective automobiles that caused damage to the class. Plaintiff is not entitled to a new trial because he was not permitted to show the jury that AHRs were made with stainless steel pins in 2020.

---

[4] The Court notes that no evidence of injury or accident caused by deployment of an AHR was presented.

### C. Jury Instruction on Design Defect

Finally, Plaintiff argues the Court erred in including a jury instruction on design defect in this FDUTPA case. (DE [364] pp. 13, 14). Plaintiff does not contest the Court's FDUTPA instruction. Nor does he challenge the substance of the design defect instruction that was given. He takes issue with the Court *giving* the design defect instruction.[5] Plaintiff's objection is that by including an instruction on design defect, the Court expanded the elements of FDUTPA beyond the statutory requirements.

Jury instructions must not "misstate the law or mislead the jury to the prejudice of the objecting party." *MidlevelU, Inc.,* 989 F.3d at 1215. A new trial is warranted only when there is "a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *Id.* (quoting *Broaddus v. Fla. Power Corp.,* 145 F.3d 1283, 1288 (11th Cir. 1998)). Further, "[j]ury instructions are subject to harmless error review." *Id.* (quoting *Fid. Interior Constr., Inc. v. Se. Carpenters Reg'l Council,* 675 F.3d 1250, 1259 (11th Cir. 2012)).

The jury was properly instructed on what Plaintiff needed to prove to prevail on his FDUTPA claim. But Plaintiff's FDUTPA case, from the Complaint through discovery and trial, was based on the theory that FCA failed to disclose a known design defect to consumers. When a FDUTPA claim is based on an underlying tort or contract, the basis for the claim must be properly alleged and proven:

> The District Court dismissed Count 3, Plaintiffs' FDUTPA claim, because Defendants did not engage in the only deceptive act or unfair practice that Count 3 alleged—they did not breach any duty to disclose the existence of Pinecastle. Plaintiffs argue that claim should not have been dismissed because a duty to disclose is not, of necessity, an element of a [FDUTPA] claim.

---

[5] Contrary to FCA's argument, Plaintiff did preserve his objection to this jury instruction. *See* Charge Conference (DE [360] pp. 58-59).

9

> The problem with Plaintiffs' argument is that, whether or not a duty to disclose is an element of a FDUTPA claim, the sole basis alleged for Count 3's FDUTPA claim is Defendants' breach of "an affirmative duty of disclosure" when Defendants "knowingly omitted any disclosure of the existence of [Pinecastle]." As we held in affirming the District Court's dismissal of Count 1, and will hold in affirming the dismissal of Count 4, the alleged duty of disclosure did not exist under Florida law. Count 3 therefore fails to state a claim for relief.

*Virgilio v. Ryland Grp., Inc.,* 680 F.3d 1329, 1337–38 (11th Cir. 2012) (footnotes omitted).

Likewise, in *Compton v. General Motors, LLC,* 2020 WL 13469725, at *4 (N.D. Fla. Mar. 31, 2020), the court dismissed a FDUTPA claim that did not sufficiently allege the defendant's knowledge. The court rejected the plaintiff's argument that FDUTPA does not contain a knowledge requirement because the entire complaint was premised on the allegation "that GM had knowledge of the defect and refused to disclose it." *Id.* The court went on to say:

> At the hearing, Compton's counsel suggested that knowledge was not an essential element of the claim—that GM violated FDUTPA by selling defective trucks, regardless of whether GM knew of the defects. But even assuming that could be a viable FDUTPA claim, that is not how Compton chose to plead it. His entire complaint revolves around the assertion that GM knew all along. *See, e.g.*, FAC ¶¶ 5-6, 24, 26, 28 33, 39, 99, 105, 108. If Compton wishes to assert a claim not dependent on knowledge, he will need to do so clearly.

*Id.*

In a FDUTPA case alleging failure to disclose a design defect, another judge in this District included an instruction on design defect. *See* Jury Instruction (DE [553] pp. 13-14), *Cardenas v. Toyota Motor Corp.,* Case No. 18-22798 (S.D. Fla. Mar. 10, 2023) (Moreno, J.).  Similarly, in the present case, the sole basis for Plaintiff's claim was that the class vehicle contained a defectively designed AHR. The instruction on design defect was properly given and Plaintiff is not entitled to a new trial.

IV. <u>CONCLUSION</u>

For the reasons discussed above, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion for New Trial (DE [393]) is **DENIED.**

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 24th day of March 2025.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF